**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
ron@consumersadvocates.com
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006 / Fax: (619) 564-6665

**COHELAN KHOURY & SINGER**
ISAM C. KHOURY (SBN 58759)
ikhoury@ckslaw.com
J. JASON HILL (SBN 179630)
jhill@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Tel: (619) 595-3001 / Fax: (619) 595-3000

Counsel for Plaintiff Jasmine Miller, individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| JASMINE MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, LLC, a Delaware Limited Liability Company; and DOES 1 through 500, inclusive,<br><br>Defendants. | Case No. 17-CV-03488-MMC<br><br>***SECOND AMENDED* CLASS ACTION COMPLAINT FOR:**<br><br>(1) Failure To Pay Regular Pay/Min. Wages in Violation of Labor Code §§ 510, 558.1, 1194, 1194.2, 1197 & IWC Wage Order 9-2001, § 4;<br><br>(2) Failure To Pay Overtime Premium Pay in Violation of Labor Code §§ 510, 558, 558.1, 1194, 1194.2 & IWC Wage Order 9-2001, § 3;<br><br>(3) Failure To Provide Meal Periods or Compensation in Lieu Thereof in Violation of Labor Code §§ 218.5, 218.6, 226.7, 512, 558.1 and IWC Wage Order 9-2001, § 11;<br><br>(4) Failure to Provide Rest Periods or Compensation in Lieu Thereof in Violation of Labor Code §§ 218.5, 218.6, 226.7, 512, 558.1 and IWC Wage Order |

9-2001, § 12;

(5) Failure To Reimburse For Necessary Expenditures in Violation of Labor Code §§ 510, 558.1, 2802 and IWC Wage Order 9-2001, §§ 8-9;

(6) Willful Failure to Provide Accurate Itemized Wage Statements in Violation of Labor Code §§ 226(a), 226.3, 558.1, 1174;

(7) Failure to Timely Pay Wages Owed for Separated Employees in Violation of Labor Code §§ 201-204, 210, 2926, 2927;

(8) Failure to Comply with Client Employer Obligations for Subcontractors in Violation of Labor Code §§ 2810, *et seq.*;

(9) Unlawful and Deceptive Business Practices in Violation of Business & Professions Code §§ 17200, *et seq.*

**DEMAND FOR JURY TRIAL**

Plaintiff Jasmine Miller ("Plaintiff" or "Miller"), on behalf of herself, all others similarly situated, and the general public, alleges against Defendants Amazon.com, LLC, a Delaware Limited Liability Company (hereinafter "AMAZON") and DOES 1 through 500, inclusive (hereinafter collectively "Joint Employer Defendants"), the following facts based upon personal knowledge, or where there is no personal knowledge, upon information, belief, and/or the investigation of counsel.

## **INTRODUCTION**

1.     Plaintiff brings this matter as a proposed class action pursuant to California Code of Civil Procedure § 382 and/or Fed. R. Civ. P. Rule 23 for the following proposed Class:

> **Plaintiff Class**:   All current and/or former hourly (non-exempt) employees of AMAZON and DOES 1 through 500, inclusive ("Joint Employer Defendants"), including the employees of any subcontractor of AMAZON, who (1) worked at any time from four years prior to the date of the commencement of this action to the date of commencement of trial (the proposed "Class Period"); (2) held the positions of "messenger," "courier," "delivery driver," and/or other similar designation(s) ("Delivery Drivers"); who were subject to Amazon's "Delivery Associate Participant Guide" [Attached as **Exhibit 3** and incorporated herein]; and (3) were assigned to deliver local warehouse goods of AMAZON and/or DOES 1 through 500 within the State of California, as shown by the Joint Employer Defendants' employment records.

> **Exclusions from Plaintiff Class**: The "Plaintiff Class" definition expressly excludes the following individuals and/or natural persons:

> (1)  Any natural persons deemed to be "employees" in the State of California during the Class Period by the following subcontracting companies:

> Plethora Solutions, Inc. (CA Corporation No. C3318386)
> SMX, LLC (CA Corporation No. 201209610441)
> Red Line Courier (R.L.C.S., Inc.) (CA Corporation No. C2020291)
> BQ Express, Inc. (CA Corporation No. C2988902)
> NEA Delivery, LLC (First Delivery) (CA Corporation No. 201428910192); and/or

> (2)  Any natural persons residing in the State of California during the

proposed Class Period who independently contracted directly with AMAZON entities to engage in local piecemeal deliveries and who were not designated as "employees" of any subcontracting business entity.

2. For all, or a substantial portion of, the proposed "Class Period," defined as four years prior to the commencement of this action until the date of commencement of trial in this action, the Joint Employer Defendants exercised joint direction and control over Plaintiff Miller and members of the proposed Plaintiff Class in performance of local delivery, messenger, and/or courier services for products specified by AMAZON, and to be delivered to local residences and businesses within the State of California. Control of such services was orchestrated using devices, software, and algorithms unilaterally controlled by AMAZON.

3. Plaintiff Miller was a California resident at all times relevant to this action. She was employed by Joint Employer Defendants and was subject to express, implied, direct and indirect control by AMAZON during her tenure of employment as an hourly non-exempt delivery driver in the Bay Area (Alameda, San Francisco, and Santa Clara) counties. Plaintiff Miller was directed and controlled through use of equipment, electronics, algorithms, software, hardware, and dispatch devices and/or other means to make local residential and business deliveries of warehouse goods within the boundaries of the State of California. Plaintiff Miller was to represent AMAZON, the deliveries were from "Amazon" or "Amazon Prime" designated accounts, and all of her attributes in décor were indicative of Amazon.com, LLC, one of the largest retailing and technology firms in the world. Plaintiff is genuinely ignorant of DOE Defendant subcontractors because most, if not all said DOE Defendants failed to properly identify themselves in pay statements, and/or willfully misled Plaintiff and the proposed Plaintiff Class as to the true identity of their employer(s), i.e., the Amazon Defendants.

4. During Plaintiff Miller's tenure, which abruptly ended in July 2016 due to injury, she and the members of the proposed Plaintiff Class were engaged in the exact same duties and under the exact same set of direction and control, and were systematically

and uniformly not paid regular pay and minimum wages for regular hours worked and/or lawful overtime premium compensation for overtime hours worked; were not provided full reimbursement for necessary expenditures incurred; were not provided lawful off-duty uninterrupted thirty-minute meal periods when the nature of work performed did not prevent Miller Plaintiff or the proposed Plaintiff Class from being relieved for lawful meal periods, or where the nature of work that prevented off-duty meal periods was attributable solely to the Joint Employer Defendants' own insufficient staffing model; were not authorized lawful uninterrupted duty-free ten-minute rest periods; and were not provided proper premium pay for denied lawful meal and rest periods.

5. Further, as a result of systematic and uniform treatment by the Joint Employer Defendants, Plaintiff and members of the proposed Plaintiff Class were not timely paid all wages earned each pay period and/or upon cessation of employment in violation of Cal. Labor Code §§ 203, 210, 2926-2927.

6. In addition, as a result of systematic and uniform treatment by the Joint Employer Defendants, Plaintiff and members of the proposed Plaintiff Class were not provided compliant accurate itemized wage statements showing all regular and overtime hours worked, the applicable rates of pay, and total gross and net hours of pay, in violation of Labor Code §§ 226 (a)-(e).

7. By failing to conform or comply with California wage and hour laws, Joint Employer Defendants, and each of them, gained an unjust and unfair competitive advantage by their use and uniform control, and uniform course of unlawful, unfair, and/or fraudulent employment and business practices, all at the expense of Plaintiff and the proposed Plaintiff Class Members, all in violation of California Business & Professions Code §§ 17200, *et seq*.

8. In the separate, but not necessarily mutually exclusive alternative theory of liability, the Joint Employer Defendants, and each them, violated labor contracting laws pursuant to Cal. Labor Code §§ 2810-2810.3, such that AMAZON was, at all times and in addition to a "joint employer," also a "client employer" such that it is liable for the failures

on the part of any "labor contractors" who failed to pay wages due in violation of California law. Appropriate Notice has been provided to AMAZON pursuant to Cal. Labor Code § 2810.3(d), a true and correct copy of which is attached hereto as **Exhibit 1**, and expressly incorporated into this Complaint by this reference. Based on Labor Code § 2810, Plaintiff is informed and believes that there are no "indispensable parties" on the grounds that the Amazon Defendants are the ultimate responsible party and/or are the Joint Employer subject to payment of wages due.

9. Plaintiff therefore brings this matter as a proposed Class Action individually and on behalf of all others similarly situated who work, or have worked, for Defendant AMAZON and/or any subcontracting entity within the State of California at any time during the proposed Class Period, as defined herein, seeking damages, restitution, disgorgement, pre- and post-judgment interest, applicable statutory penalties, attorneys' fees, costs of suit, and any further equitable relief this Court may deem just and proper, under, *inter alia*, California Labor Code §§ 203 , 210, 218.5, 218.6, 226, 226.3, 226.7, 226.8, 510, 512, 558, 558.1, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1400-1404, 2802, 2804, 2810, *et seq*., 2810.3, as well as Cal. Code Regs. tit. 8, § 11090 (Industrial Welfare Commission ("IWC") Wage Order No. 9-2001).

10. Plaintiff has also given Notice to the California Labor and Workforce Development Agency ("LWDA") of intent to bring a representative action for civil penalties against Joint Employer Defendants, in full compliance with the Notice provisions of California Labor Code § 2699.3. If the LWDA takes no action or the Joint Employer Defendants make no cure within the time required by California's Private Attorneys General Act of 2004 ("PAGA"), a Representative Action will be brought by Plaintiff based upon this Complaint or through a separate suit to seek civil penalties from all Joint Employer Defendants. A true and correct copy of the LWDA Notice Letter is attached hereto as **Exhibit 2**, and by this reference is expressly incorporated into this Complaint and each following paragraph.

/ / /

# I.   JURISDICTION AND VENUE

11.   Defendant removed this action to this Court on June 15, 2017 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 from the Superior Court of the State of California, County of Alameda. Plaintiff disputes the existence of jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").

12.   This Court also has jurisdiction over this action for damages, restitution, disgorgement, injunctive relief, penalties, attorneys' fees, costs, and equitable relief pursuant to, among other provisions, Cal. Lab. Code §§ 203 , 210, 218.5, 218.6, 226, 226.3, 226.7, 226.8, 510, 512, 558, 558.1, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 2753, 2802, 2804, 2810, 2926, 2927, and 3357; Cal. Code Regs. tit. 8, § 11090 (IWC Wage Order No. 9-2001); and Cal. Bus. & Prof. Code §§ 17200, *et seq*.

13.   The Joint Employer Defendants are associations, corporations, business entities, and/or persons that are based in, authorized, and/or registered to conduct, and in fact do conduct, substantial business, and employ, or employed, individuals in the State of California, County of Alameda.

14.   Defendant AMAZON.COM, LLC is a Limited Liability Company in the State of Delaware and headquartered in the State of Washington, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

15.   Venue is proper in the United States District Court, Northern District to the extent that this Court has jurisdiction under the CAFA.

# II.   PARTIES

16.   Plaintiff Jasmine Miller, a natural person, is, and at all times mentioned herein was, a resident and citizen of the State of California. During the Class Period, Plaintiff Miller was employed by Joint Employer Defendants as a "Messenger," "Courier," and/or "Local Delivery Driver," providing pick-up and delivery services predominantly or primarily for AMAZON under a name called "Amazon" and/or the "Amazon Prime" auspices. Her employment was ended as of July 2016 due to work injury. At all relevant times, Miller and all proposed class members were assigned scanners from Amazon and

were subject to Amazon's "Delivery Associate Participant Guide" attached hereto as **Exhibit 3** and expressly incorporated herein by this reference.

17. Defendant Amazon.com, LLC is incorporated in Delaware and headquartered in the State of Washington, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109. Based on information and belief, AMAZON also engages in business activities in the State of California with a variety of "shell" and "sham" corporations and limited liability companies in order to avoid liability for violations of California wage and hour laws, and engages a variety of employees and subcontractors to engage in local delivery services in the State of California during all or a substantial portion of the proposed Class Period.

18. The true names and capabilities, whether individual, corporate, associate, or otherwise, of Doe Defendants 1 through 500 ("Doe Defendants"), are currently unknown to Plaintiff, and Plaintiff therefore sues these Doe Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show their true names and capacities when the same has been ascertained.

19. Plaintiff is informed and believes, and based thereon alleges, that each of the Joint Employer Defendants (including the Doe Defendants) were, or are, in some way or manner, responsible and liable to Plaintiff and Class Members for the events, happenings, and circumstances hereinafter set forth in the body of this Complaint, and directly and proximately caused Plaintiff and Class Members to be subject to the unlawful employment and business practices, wrongs, injuries, and damages complained of herein. Plaintiff is informed and believes, and based thereon alleges, that said Joint Employer Defendants may be further responsible for the damages and injuries suffered by Plaintiff and Class Members on alternative theories of liability not specifically addressed herein. This includes both actual and ostensible agency, wherein, AMAZON uses subterfuge organizations, contractors, and wholly owned, directed, and controlled facilitators in the State of California to by-pass any direct liability for wage and hour violations. Plaintiff is informed and believes that part of this strategy provides false information as to who controls work

activities and who issues wage statements.

20.     Plaintiff is informed and believes, and based thereon alleges, that the Joint Employer Defendants (including the Doe Defendants), and each of them, were, and are, an owner, co-owner, agent, representative, partner, and/or alter ego of its co-defendants, or otherwise acted, and continue to act, on behalf of each and every remaining Joint Employer Defendant and, in doing the things hereinafter alleged, were, at all times material hereto, acting within the course and scope of their authorities as an owner, co-owner, agent, representative, partner, and/or alter ego of its co-Defendants, with the full knowledge, permission, consent, and authorization of each and every remaining Joint Employer Defendant, each co-Defendant having ratified or promoted the acts of the other co-Defendants, such that each of them are jointly and severally liable to Plaintiff and Class Members. Plaintiff is further informed and believes, and based thereon alleges, that at all material times alleged herein, the Joint Employer Defendants, and each of them, were members of, and engaged in, a joint enterprise, partnership, and/or common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership, and/or common enterprise.

21.     Plaintiff is informed and believes, and based thereon alleges, that at all material times herein mentioned, the Joint Employer Defendants (including the Doe Defendants), and each of them, aided and abetted the acts and omissions of each and every one of the other the Joint Employer Defendants, thereby directly and proximately causing the damages and injuries alleged herein.

22.     Plaintiff is informed and believes, and based thereon alleges, that each Joint Employer Defendant (including the Doe Defendants), directly or indirectly, or through actual agents, ostensible agents and/or other persons, employed Plaintiff and other members of the Class, and exercised control over their wages, hours, and working conditions. Plaintiff is further informed and believes, and based thereon alleges, that each Joint Employer Defendant acted in all respects pertinent to this action as the actual or ostensible agent of the other Joint Employer Defendants, carried out a joint scheme,

business plan, or policy in all respects pertinent hereto, and the acts of each Joint Employer Defendant is legally attributable to the other Joint Employer Defendants. The Joint Employer Defendants, and each of them, jointly managed, operated, and controlled all aspects of the manner and means of employee work and were a joint employer of Plaintiff and Class Members under California law, and liable for illicit wage and hour practices alleged herein.

## III.  GENERAL ALLEGATIONS

23.    During all, or a substantial portion, of the Class Period, as defined herein, Plaintiff Miller and each Class Member she seeks to represent were jointly employed Amazon.com, LLC and one or more of DOES 1-500, within the State of California, providing delivery services throughout the Bay Area and beyond, for consumers in the State of California. Plaintiff and the proposed Class Members suffered damages, wage loss, and legally cognizable harm due to the Joint Employer Defendants' unlawful employment policies and practices, and has standing to bring this case individually and as a representative for other similarly-impacted Class Members. Plaintiff Miller alone, alleges, based on experience, that the Joint Employer Defendants owe at least $1,000.00 to $3,000.00 without any input from Plaintiff Class Counsel consultants who are expected to be retained to calculate actual losses caused by the Joint Employer Defendants' collective failure to comply with California wage and hour laws/regulations.

24.    Specifically, Plaintiff Miller was employed by the Joint Employer Defendants between approximately April 2016 and July 2016, and was assigned to an account to provide package pick-up and delivery services for AMAZON out of AMAZON's hub/terminal warehouse located at 990 Beecher Street in San Leandro, California 94577. Ms. Miller was compensated for her services at a regular hourly pay rate of approximately $15.00 per hour.

25.    During her employment, Plaintiff  Miller's clock-in/clock-out times, as well as meal periods taken (if any), were logged and tracked through a downloaded application ("app.") on her personal cell phone called "iSolved Time."

## AMAZON's Direction and Control over Class Members' Wages, Work Schedules, and Job Duties

26.     Throughout the Class Period, AMAZON controlled, or had the right to control, Plaintiff and other Delivery Drivers' compensation structures and work schedules, as well as their work and the manner and means in which it was performed. Defendant AMAZON also had, and has, the power to hire, discipline, supervise, and fire Delivery Drivers, and also provides training, the place of work, and resources needed to perform AMAZON's work. The work performed by Delivery Drivers such as Plaintiff and Class Members requires no particular specialized knowledge or skill, and is part of the regular business which retained pervasive control over the joint business operation as a whole, and jointly benefitted financially therefrom.

27.     Plaintiff is informed and believes, and based thereon alleges, that Defendant AMAZON monitored Plaintiff and other Class Members' specific tasks, pick-ups, deliveries, and driving time, down to the second, through electronic devices it issued and other applications used electronically to direct and control all aspects of employment duties.  These devices will have unique employee identifiable signatures that will show extensive violations of California wage and hour laws, including unpaid time, unpaid overtime, un-provided or interrupted meal and rest periods, expenses incurred but not reimbursed, and all other data that can be managed and deciphered by appropriate consultants for which proposed Class Counsel is willing to provide, along with a full accounting.

28.     Concerning control over wages and compensation, throughout the Class Period, the Joint Employer Defendants, including AMAZON, unilaterally set Delivery Drivers' (including Plaintiff and Class Members) compensation structures, wages and pay rates, bonus programs, and incentives, all without consideration of input or negotiation by Delivery Drivers. Plaintiff and Class Members were paid hourly rather than by the job, and were not employed for only specified limited periods of time. The Joint Employer Defendants, including AMAZON, also had, and have, the right to modify Delivery

Drivers' compensation rates at their sole discretion. Nevertheless, employees of the Joint Employer Defendants were penalized or subject to reduced work if they missed deliveries, were late or were stuck in traffic. In other words, uncontrollable events that interfered with AMAZON's program, timeline, and directives resulted in reprisal, reduced work, discipline and/or termination.

29. During her employment, Plaintiff Miller was paid hourly wages but was required to meet strict delivery deadlines based on computer-controlled dispatching and constant communication, direction, and control of every facet of local delivery, including schedules, uniforms, training, and policies and procedures to conform with the Amazon.com program.

30. Regarding control over work hours and schedules, AMAZON unilaterally sets Delivery Drivers' work schedules. Plaintiff and Delivery Drivers work out of an assigned hub or terminal, to which they are required to report to before commencing their daily pick-up and delivery duties. Furthermore, AMAZON determines the daily routes/locations Delivery Drivers (including Plaintiff and Class Members) are assigned to, as well as the number of deliveries to be completed each day and delivery deadlines. Failure to comply with these imposed schedules and deadlines subjects Delivery Drivers to potential disciplinary measures, up to and including termination, contract cancellation, and/or non-renewal of contracts.

31. The Delivery service was a 24-7 operation, 24 hours per day, 365 days per year.

32. Concerning the level of control over its Delivery Drivers' work, AMAZON requires Delivery Drivers (including Plaintiff and Class Members) to, among other things, follow specific guidelines when taking orders and handling packages or documents. Amazon also requires Delivery Drivers to deliver each package within a specific window of time, negotiated by AMAZON and its customers. Plaintiff Miller and other Delivery Drivers work out of an assigned Amazon hub or warehouse, to which they are required to report to and complete pre-delivery duties before commencing their daily deliveries.

Delivery Drivers must also adhere to AMAZON's company policies and procedures, such as those related to customer service and interaction; background and criminal history qualifications; honesty standards; driving and delivery standards; work uniforms and personal appearance; drug, alcohol, and tobacco use; workplace harassment; weapons and dangerous materials; progressive discipline; and concessions (undelivered packages, damaged packages, lost and stolen packages, etc.), among others. And, all Delivery Drivers must meet AMAZON's safety and training requirements. Moreover, AMAZON requires Delivery Drivers, including Ms. Miller, to comply with strict uniform requirements, which includes, among other items, a company shirt affixed with the Amazon logo, an Amazon hat, black pants, black shoes, and a safety vest. Delivery Drivers are also required to drive company vehicles affixed with an Amazon logo decal for pick-up and delivery services. Finally, AMAZON has the power to train, discipline, and fire Delivery Drivers (or terminate their contracts). Indeed, Plaintiff Miller and other Delivery Drivers dealt with AMAZON supervisorial employees on a regular basis and routinely had to comply with their orders and directions, including those relating to, *inter alia*, the amount of time allotted for pick-ups and deliveries, concessions, and pre-delivery duties.

33. In regards to training, AMAZON trains Delivery Drivers and requires them to attend company meetings, including meetings regarding training (i.e., training for updated mobile delivery software systems, safety, time efficiency, accident prevention, concessions, etc.). Indeed, AMAZON claims that its Delivery Drivers are highly trained, and must take a sample route test and map test to prove that they know how to look up and travel to all addresses in their designated service areas.

34. In addition to company training, AMAZON also provides its Delivery Drivers with many of the tools necessary to perform their work-related duties, including, but not limited to: distribution hubs, terminals, and/or warehouses to work out of; marked Amazon vehicles; handheld scanners preloaded with package and customer information; certain work uniform-related items (i.e., Amazon company shirts and hats); delivery management system software, GPS tools, and turn by turn directions; route and delivery schedules;

customer payment systems; shipping package options; and other resources. To compliment these services and tools, AMAZON also provides its customers with access to online messenger system services, customer service and support call centers, online and telephone payment and processing services, online shipment tracking and monitoring services, shipment status notifications, and more.

## **Failure to Provide Lawful Off-Duty Meal and Rest Periods, as well as Premium Pay for Denied Lawful Meal and Rest Periods**

35.     Throughout the Class Period, the Joint Employer Defendants routinely denied Plaintiff and Class Members lawful unpaid off-duty thirty-minute meal periods within the first five hours of work for shifts lasting more than six hours, and/or second off-duty meal periods for shifts lasting ten or more hours in a single workday.  The Joint Employer Defendants also routinely denied Plaintiff and Class Members lawful paid off-duty ten-minute rest periods for every four hours worked, or major fraction thereof, for shifts lasting more than three and one-half hours in a single workday.

36.     Specifically, the Joint Employer Defendants routinely denied Plaintiff and Class Members mandated lawful uninterrupted meal and rest periods by, *inter alia*, scheduling them for numerous time-consuming deliveries and lengthy delivery routes that prevented them from completing their daily deliveries if uninterrupted off-duty meal and rest periods were taken. Because Plaintiff and Class Members were required to complete all daily pick-ups, deliveries, and other work-related duties before ending their shifts, they typically had no time to take lawful uninterrupted meal and rest periods if they were to complete their required duties. If Plaintiff or Class Members ever failed to complete all work-related duties (including deliveries), they would be subject to potential disciplinary measures, up to and including termination, contract cancellation, and/or non-renewal of contracts. Even when Plaintiff and Class Members were provided some form of meal and/or rest periods during the Class Period, those periods were typically "on-duty," subject to management control and continuance of work-related duties.

37.     The nature of their work did not, and does not, prevent Plaintiff and Class

SECOND AMENDED CLASS ACTION COMPLAINT                    CASE NO. 17-CV-03488-MMC

Members from taking lawful uninterrupted off-duty meal and rest periods, and thus any off-duty meal period waiver or on-duty meal period agreement entered into with Plaintiff or Class Members, if any, would be unenforceable. To the contrary, any inability to take off-duty uninterrupted meal and rest periods is attributable solely to the Joint Employer Defendants' own insufficient staffing models, rather than the general nature of the work performed by Delivery Drivers such as Plaintiff and Class Members.

38. Relatedly, throughout the Class Period, the Joint Employer Defendants systematically failed to provide Plaintiff and Class Members proper premium pay at the rate of one hour of their regular pay rates for each workday they were denied an off-duty unpaid thirty-minute meal periods. Likewise, the Joint Employer Defendants also systematically failed to provide Plaintiff and Class Members proper premium pay at the rate of one hour of their regular pay rates for each workday they were denied lawful uninterrupted paid rest periods. No hour of premium pay was provided even though the software applications showed that activity was present during time that such rest periods were to be provided. The Joint Employer Defendants' electronic records will show that the employees were engaged in work activities in order to comply with delivery demands during times that off-duty meal and rest periods were to be provided. Any of the employees of the Joint Employer Defendants who skipped meal and rest periods did so under duress for fear that AMAZON would restrict future driver assignments as a result of missed or late deliveries. There was at no time a voluntary waiver of rest periods by Plaintiff or members of the Rest Period Subclass; rather the employees were required to continue working under the systematic and draconian production practices of AMAZON and the Joint Employer Defendants to meet delivery quotas.

## **Failure to Pay Regular Pay Regular Pay/Minimum Wages and Overtime Premium Pay**

39. During the Class Period, the Joint Employer Defendants routinely denied Delivery Drivers (including Plaintiff and Class Members) regular pay—and, consequently, mandatory minimum wages under federal and state law—for regular hours worked.

40.    Specifically, the Joint Employer Defendants denied Plaintiff and Class Members regular pay/minimum wages for hours worked by requiring them to work extended hours in order to complete their job duties—including pick-ups and deliveries, as well as completing paperwork—but only compensating them for a set number of hours.

41.    While working for the Joint Employer Defendants, Plaintiff typically worked approximately ten or more hours per day, including overtime hours, and was required to complete all pick-ups, deliveries, and other work-related duties before being permitted to end her workday. The Joint Employer Defendants, including AMAZON, unilaterally determined the number of daily deliveries Delivery Drivers were required to complete, which often could not be done in a regular eight-hour workday. If Plaintiff and Class Members did not complete their assigned daily duties, they would be subject to potential disciplinary measures, up to and including termination, contract cancellation, and/or non-renewal of contracts. As such, Plaintiff and Class Members would often be required to work several hours a day with no compensation at all during the Class Period.

42.    Additionally, Plaintiff and Class Members were often required to attend company meetings and mandated training (typically lasting one or more hours), but were not always compensated for attending those meetings.

43.    In addition to regular pay/minimum wages, the Joint Employer Defendants also routinely denied Plaintiff and Class Members applicable overtime premium compensation for hours worked in excess of eight hours per day, forty hours per week, and/or hours worked on the seventh consecutive day in a work week. During the Class Period, the Joint Employer Defendants typically required Delivery Drivers (including Plaintiff and Class Members) to work overtime hours, yet often did not compensate them for all overtime hours worked, let alone proper overtime premium compensation. Indeed, despite regularly working more than eight hours in a workday and/or forty hours in a workweek, Plaintiff was regularly denied overtime premium compensation for overtime hours worked during the Class Period.

/ / /

**Failure to Reimburse for Necessary Expenditures Incurred**

44.     During the Class Period, the Joint Employer Defendants routinely denied Delivery Drivers (including Plaintiff and Class Members) reimbursement for necessary expenditures incurred as a direct consequence and requirement of performing their job duties, including, but not limited to, work uniform-related items and necessary tools and supplies.

45.     Plaintiff and other Delivery Drivers were required to, and did, personally pay for numerous expenses that are necessary to their performance and work-related duties. Plaintiff and Class Members were also required to carry and use their personal cell phones for scheduling purposes and maintaining communication with dispatch and the warehouse—all without any reimbursement of any kind.  Other necessary expenditures were incurred for parking, parking citations, tolls and other incidental but necessary expenditures incurred directly related.  The nature and extent of such expenditures were common to the proposed class, but no reimbursement was provided.

**Inaccurate Wage Statements and Failure to Maintain Accurate Payroll Records**

46.     During the Class Period, the Joint Employer Defendants routinely failed to provide Plaintiff and Class Members accurate itemized wage statements. Specifically, the wage statements provided by the Joint Employer Defendants failed to accurately list all employer names and addresses, all hours worked by Plaintiff and Class Members, as well as all wages earned—including regular pay, overtime pay, and premium pay for denied lawful meal and rest periods—and reimbursement for necessary incurred expenditures. As such, the wage statements Plaintiff and Class Members were provided inaccurately reflected their actual gross wages or net wages earned each pay period. Because of these inaccurate wage statements, Plaintiff and Class Members were never aware of what their true wages should have been and how they were calculated.

47.     During the Class Period, the Joint Employer Defendants also failed to maintain accurate payroll records showing the total hours worked daily by, and the wages paid to, Delivery Drivers (including Plaintiff and Class Members). None of the Joint

Employer Defendants' payroll records pertaining to Plaintiff and Class Members accurately reflect all employer names and addresses, regular hours worked, overtime hours worked, regular hourly rates, overtime hourly rates, actual gross wages and net wages earned, meal periods, premium wages owed for denied lawful rest and meal periods,[1] and necessary expenditures incurred. As a result of the Joint Employer Defendants' failure to maintain accurate payroll records, Plaintiff and Class Members have been precluded from accurately monitoring their number of hours worked.

### Failure to Timely Pay Wages Owed

48.     As alleged above, during the Class Period, Plaintiff and Class Members were not provided all earned compensation owed them each and every pay period because the Joint Employer Defendants regularly failed to provide them regular wages earned, overtime premium pay, premium wages for denied lawful meal and rest periods, and reimbursement for necessary expenditures incurred. Similarly, and consequently, Plaintiff (and other Class Members no longer working for the Joint Employer Defendants) were not paid all wages owed for services rendered upon cessation of employment.

49.     Plaintiff specifically was not paid all wages owed upon separation from employment. Although California Labor Code sections 202 and 2927 require an employer to pay an employee within 72 hours all compensation for services rendered up to the time of quitting, Plaintiff was not paid all wages, including minimum wages, overtime and meal/rest period premiums, which should have been directly deposited into her account within 72 hours of separation from employment.

## IV.   CLASS ALLEGATIONS

50.     Plaintiff brings this class action on behalf of herself and all Members of the Class ("Class"), initially defined as:

**Plaintiff Class**:  All current and/or former hourly (non-exempt) employees of AMAZON and DOES 1 through 500, inclusive ("Joint Employer Defendants"), including the employees of any subcontractor of AMAZON,

---

[1] Premium pay for denied meal periods and rest breaks is considered a "wage" rather than a penalty. *See Murphy v. Kenneth Cole Prods., Inc.* (2007) 40 Cal. 4th 1094, 1114.

who (1) worked at any time from four years prior to the date of the commencement of this action to the date of commencement of trial (the proposed "Class Period"); (2) held the positions of "messenger," "courier," "delivery driver," and/or other similar designation(s) ("Delivery Drivers"); who were subject to Amazon's "Delivery Associate Participant Guide" [Attached as **Exhibit 3** and incorporated herein]; and (3) were assigned to deliver local warehouse goods of AMAZON and/or DOES 1 through 500 within the State of California, as shown by the Joint Employer Defendants' employment records.

**Exclusions from Plaintiff Class**: The "Plaintiff Class" definition expressly excludes the following individuals and/or natural persons:

(1)  Any natural persons deemed to be "employees" in the State of California during the Class Period by the following subcontracting companies:

Plethora Solutions, Inc. (CA Corporation No. C3318386)
SMX, LLC (CA Corporation No. 201209610441)
Red Line Courier (R.L.C.S., Inc.) (CA Corporation No. C2020291)
BQ Express, Inc. (CA Corporation No. C2988902)
NEA Delivery, LLC (First Delivery) (CA Corporation No. 201428910192); and/or

(2)  Any natural persons residing in the State of California during the proposed Class Period who independently contracted directly with AMAZON entities to engage in local piecemeal deliveries and who were not designated as "employees" of any subcontracting business entity.

51.    Plaintiff also alleges  and will seek to certify the following subclasses, defined as follows:

**Subclass One ("The Minimum Wage Subclass")**:  All members of the Plaintiff Class who were not compensated for all hours worked or under the Joint Employer Defendants' control at the applicable minimum wage as required by Labor Code §§ 1194-1194.2 and IWC Wage Order 9-2001, § 4.

**Subclass Two ("The Overtime Subclass")**:  All members of the Plaintiff Class who were not compensated for all hours worked or under the Joint Employer Defendants' control in excess of eight hours per day and/or forty hours per week as required by Labor Code §§ 510, 1194, and IWC Wage Order 9-2001, § 3.

**Subclass Three-A ("The Meal Period Subclass")**:  All members of the Plaintiff Class who were subject to the Joint Employer Defendants' policy of failing to

provide unpaid 30-minute uninterrupted and duty-free meal periods or one hour of pay at the employee's regular rate of pay in lieu thereof as required by Labor Code §§ 226.7, 510 and IWC Wage Order 9-2001, § 11.

**Subclass Three-B ("The Second Meal Period Subclass"):**  All members of the Plaintiff Class who worked a shift of ten hours or more and were subject to the Joint Employer Defendants' policy of failing to provide a second 30-minute meal period or one hour of pay at the employee's regular rate of pay in lieu thereof as required by Labor Code §§ 226.7, 510 and IWC Wage Order 9-2001, § 11.

**Subclass Four ("The Rest Period Subclass"):**  All members of the Plaintiff Class who worked qualifying shifts but were not provided 10-minute paid rest periods for every four hours worked (or major fraction thereof), and who were not paid one hour of pay at the employee's regular rate of compensation in lieu thereof as required by Labor Code § 226.7 and IWC Wage Order 9-2001, § 12.

**Subclass Five ("The Expense Reimbursement Subclass"):**  All members of the Plaintiff Class who incurred reasonable and necessary expenses on behalf of the Joint Employer Defendants, and who were subject to a policy and practice wherein such expenses were not be reimbursed as required by Labor Code § 2802 and IWC Wage Order 9-2001, §§ 8-9

**Subclass Six ("The Wage Statement Subclass"):**  All members of the Plaintiff Class who, within the applicable limitations period, were not provided accurate itemized wage statements showing all hours worked and applicable rates of pay as required by Labor Code §§ 226(a)(1)-(9).

**Subclass Seven ("The Waiting Time Subclass"):**  All members of the Plaintiff Class who, within the applicable limitations period, either voluntarily or involuntarily separated from their employment and were not timely paid all wages due as required by Labor Code § 203.

**Subclass Eight ("The Labor Contractor Subclass"):**  All members of the Plaintiff Class who were employed by Client Employers and/or Labor Contractors and for whom all wages due were not paid during the applicable limitations period as required by Labor Code §§ 2810-2810.3

**Subclass Nine ("The UCL Subclass"):**  All members of the Plaintiff Class who are owed restitution if it is found that the Joint Employer Defendants, more likely than not, engaged in unlawful, deceptive and/or unfair business acts and/or practices pursuant to Business & Professions Code § 17200.

52.     Plaintiff reserves the right to amend, alter and modify the proposed Plaintiff

Class and Subclass definitions in a manner that conforms to proof. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

53. This action is being brought as a class action pursuant to California Code of Civil Procedure § 382 because there is a well-defined community of interest and the proposed Class is easily ascertainable. Further, a class action is appropriate because the Joint Employer Defendants have acted, or refused to act, on grounds generally applicable to the Class, making class-wide relief appropriate.

**Commonality**

54. This action may be brought as a class action because common questions of law and fact predominate over any issues solely affecting the individual Plaintiff or Class Members, including, but not limited to:

i. Whether the Joint Employer Defendants violated the California Labor Code and applicable Wage Order by failing to compensate Plaintiff and Class Members mandated minimum wages and/or regular pay for regular hours worked;

ii. Whether the Joint Employer Defendants are liable for damages, interest, restitution, statutory penalties, attorneys' fees, and/or costs for failing to compensate Plaintiff and Class Members mandated minimum wages and/or regular pay;

iii. Whether the Joint Employer Defendants violated the California Labor Code and applicable Wage Order by failing to properly compensate Plaintiff and Class Members mandated overtime premium pay for hours worked in excess of eight (8) hours in a workday, forty (40) hours in a workweek, and/or hours worked on the seventh consecutive day in a workweek;

iv. Whether the Joint Employer Defendants are liable for damages, interest, restitution, statutory penalties, attorneys' fees, and/or costs for failing to properly compensate Plaintiff and Class Members mandated overtime wages;

v. Whether the Joint Employer Defendants violated the California Labor Code and applicable Wage Order by failing to provide Plaintiff and Class Members lawful thirty (30)-minute uninterrupted meal periods within the

first five (5) hours of work in any workday lasting more than six (6) hours, and by failing to compensate Plaintiff and Class Members one hour of premium pay at their regular hourly pay rates for each workday a lawful meal period was not provided;

vi.  Whether the Joint Employer Defendants are liable for damages, interest, restitution, statutory penalties, attorneys' fees, and/or costs for failing to compensate Plaintiff and Class Members one hour of premium pay at their regular hourly pay rates for each workday a lawful meal period was not provided;

vii.  Whether the Joint Employer Defendants violated the California Labor Code and applicable Wage Order by failing to provide Plaintiff and Class Members lawful ten (10)-minute uninterrupted rest breaks for every four (4) hour period of work in any workday, or major fraction thereof, and by failing to compensate Plaintiff and Class Members one hour of premium pay at their regular hourly pay rates for each workday a lawful rest period was not provided;

viii.  Whether the Joint Employer Defendants are liable for damages, interest, restitution, statutory penalties, attorneys' fees, and/or costs for failing to compensate Plaintiff and Class Members one hour of premium pay at their regular hourly pay rates for each workday a lawful rest period was not provided;

ix.  Whether the Joint Employer Defendants violated the California Labor Code and applicable Wage Order by failing to provide Plaintiff and Class Members accurate itemized wage statements;

x.  Whether the Joint Employer Defendants are liable for damages, interest, restitution, statutory penalties, attorneys' fees, and/or costs for failing to provide Plaintiff and Class Members accurate itemized wage statements;

xi.  Whether the Joint Employer Defendants violated the California Labor Code and applicable Wage Order by failing to keep accurate payroll records concerning Plaintiff and Class Members;

xii.  Whether the Joint Employer Defendants are liable for statutory penalties for failing to keep accurate payroll records concerning Plaintiff and Class Members;

xiii.  Whether the Joint Employer Defendants violated the California Labor Code and applicable Wage Order by failing to promptly pay Plaintiff and Class Members all wages owed each pay period;

xiv.  Whether the Joint Employer Defendants are liable for penalties for failing to promptly pay Plaintiff and Class Members all wages owed each pay period;

xv. Whether the Joint Employer Defendants are liable for waiting time penalties and statutory penalties for failing to promptly pay Plaintiff and Class Members who no longer work for the Joint Employer Defendants all wages owed upon their cessation of employment;

xvi. Whether the Joint Employer Defendants violated the California Labor Code and applicable Wage Order by failing to indemnify/reimburse Plaintiff and Class Members for necessary expenditures incurred while discharging their duties and/or obeying the direction of their employer;

xvii. Whether the Joint Employer Defendants violated Labor Contracting and Client Employer obligations for adequate compensation under Labor Code § 2810, *et seq.*;

xviii. Whether the Joint Employer Defendants violated California Business and Professions Code §§ 17200, *et seq.* by engaging in unfair, unlawful, and/or fraudulent business practices.

## Numerosity

55.　This Class consists of likely over 100 individuals currently or formerly employed by the Joint Employer Defendants throughout California within the proposed Class Period. The members of the Class are so numerous that joinder of each Class Member is impracticable, if not impossible. As such, a class action is the only available method for the fair and efficient adjudication of this controversy.

## Ascertainability

56.　Class Members can easily be identified by an examination and analysis of employee records and payroll records that the Joint Employer Defendants are required by law to maintain, among other records within the Joint Employer Defendants' possession, custody, or control.[2]

## Typicality

57.　Plaintiff's claims are typical of the claims of each Class Member in that all claims result from the Joint Employer Defendants' uniform application of unlawful employment practices, as alleged herein. Moreover, Plaintiff's claims are typical of the

---

[2] "Every person employing labor in this state shall: . . . (c) Keep a record showing the names and addresses of all employees employed . . . . [and] (d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records . . . . These records shall be kept . . . on file for not less than three years." Cal. Lab. Code § 1174; *see also* Section 7 of IWC Wage Order No. 9-2001.

SECOND AMENDED CLASS ACTION COMPLAINT                    CASE NO. 17-CV-03488-MMC

claims of each Class Member because each have sustained damages arising out of, and caused by, the Joint Employer Defendants' common course of unlawful conduct, as alleged herein. As such, Plaintiff has the same interest in this matter as all members of the Class, and has no interests antagonistic to the interests of other Class Members.

**Superiority**

58. This action is brought as a class action because this method is superior for the fair and efficient adjudication of the controversy. The amount of damages suffered by individual Class Members, while not inconsequential, makes individual actions impracticable given the expenses and burdens associated with seeking individual relief, as each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish the Joint Employer Defendants' liability. A class action is the only practicable method by which the Plaintiff and Class Members can achieve redress from the Joint Employer Defendants and prevent the Joint Employer Defendants from unjustly benefitting from their common course of unlawful conduct, as alleged herein. The prosecution of individual actions would present a risk of inconsistent judgments, even though each Class Member has an effectively identical claim of right against the Joint Employer Defendants. Inconsistent judgments could be dispositive to the interests of other Class Members who are not parties to the individual adjudication and/or may substantially impede their ability to adequately protect their interests. If separate actions were brought, or are required to be brought, by individual Class Members, the resulting multiplicity of lawsuits would cause an undue hardship and burden on the parties and the judicial system. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of the Joint Employer Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

///

**Adequacy**

59. Plaintiff is an adequate representative of the Class. Plaintiff's claims are typical of those of the Class. Plaintiff and Class Members have no unique claims, have no conflicts of interest, and share the same interests in the litigation of this matter. Plaintiff retained competent counsel experienced in employment law and the prosecution of complex class actions, and are committed to the vigorous prosecution of this action. Further, Plaintiff's counsel have the ability and willingness to commit significant resources to the prosecution of this matter. Accordingly, Plaintiff is an adequate representative of the Class, and will fairly and adequately protect the interests of the Class with the help of experienced and knowledgeable retained counsel.

## V. CAUSES OF ACTION

### First Cause of Action
**Failure to Provide Regular Pay/Minimum Wages**
**Cal. Lab. Code §§ 1194, 1194.2, 1197, 1197.1; Cal. Code Regs. tit. 8, § 11090**
**(By Plaintiff and members of the "Minimum Wage Subclass" as against all Defendants)**

60. Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

61. California Labor Code section 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum or overtime compensation, including interest thereon, reasonable attorneys' fees and costs of suit.

62. California Labor Code section 1194.2 provides:

> In any action under Section 98, 1193.6, or 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this

subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation.

63. California Labor Code section 1197 provides:

The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

64. California Labor Code section 1197.1 provides in pertinent part:

(a) Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty, restitution of wages, and liquidated damages payable to the employee, as follows:

(1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages and liquidated damages pursuant to Section 1194.2.

(2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages and liquidated damages pursuant to Section 1194.2.

(3) Wages and liquidated damages recovered pursuant to this section shall be paid to the affected employee . . . .

65. Pursuant to California Labor Code section 1198, the Industrial Welfare Commission ("IWC") provides the maximum hours of work and standard conditions of labor for California employees.

66. Section 4 of IWC Wage Order No. 9-2001 provides in pertinent part:

(A) Every employer shall pay to each employee wages not less than nine dollars ($9.00) per hour for all hours worked, effective July 1, 2014, and not less than ten dollars ($10.00) per hour for all hours worked, effective January 1, 2016 . . . .

(B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

67. Section 2(H) of IWC Wage Order No. 9-2001 defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

68. The minimum wage in California for labor performed between January 1, 2008 and July 1, 2014 was $8.00 per hour.

69. The minimum wage in California for labor performed between July 1, 2014 and January 1, 2016 was $9.00 per hour.

70. The minimum wage in California for labor performed on or after January 1, 2016 is $10.00 per hour.

71. In general, claims for unpaid regular/minimum and overtime wages must be filed within three years of the date the wages were earned. Cal. Civ. Proc. Code § 338. However, a cause of action under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), as alleged herein, extends the statute of limitations by an additional year, effectively giving employees up to four years to file a wage claim in court. *See* Cal. Bus. & Prof. Code § 17208.

72. Plaintiff and Class Members did not enter into legally binding agreements with the Joint Employer Defendants to work for a lesser wage.

73. The Joint Employer Defendants' conduct, as alleged herein, violates the aforementioned regulations because throughout the Class Period, the Joint Employer Defendants failed to compensate Plaintiff and Class Members for all regular hours worked.

74. As alleged in more detail above, the Joint Employer Defendants denied Plaintiff and Class Members regular pay/minimum wages for regular hours worked by, *inter alia*, requiring them to attend unpaid company meetings and training programs, as well as work extended hours in order to complete their mandated job duties, but only compensating them for a set number of hours.

75.    As a direct and proximate result of the Joint Employer Defendants' unlawful acts, as alleged herein, Plaintiff and Class Members have been deprived, and continue to be deprived, of regular pay and mandated minimum wages for regular hours worked in amounts to be determined according to proof.

76.    Accordingly, Plaintiff and Class Members are entitled to recover, and hereby seek, the unpaid balance of the full amount of deprived wages, pre- and post-judgment interest, applicable penalties, attorneys' fees, costs of suit, and any further equitable relief this Court may deem just and proper. *See* Cal. Lab. Code §§ 1194, 1197.1; *see also*, Cal. Civ. Proc. Code § 1021.5. Plaintiff and Class Members are also entitled to, and hereby seek, liquidated damages. *See* Cal. Lab. Code §§ 1194.2, 1197.1.

**<u>Second Cause of Action</u>**
**Failure to Provide Overtime Premium Pay**
**Cal. Lab. Code §§ 1194, 1194.2; Cal. Code Regs. tit. 8, § 11090**
**(On behalf of Plaintiff and Members of "The Overtime Subclass" as against all Defendants)**

77.    Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

78.    California Labor Code section 1194 provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum or overtime compensation, including interest thereon, reasonable attorneys' fees and costs of suit.

79.    Pursuant to California Labor Code section 1198, the Industrial Welfare Commission provides the maximum hours of work and standard conditions of labor for California employees.

80.    Section 3(A) of IWC Wage Order No. 9-2001 provides in pertinent part:

> . . . employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee

26

receives one and one-half (1 1 /2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:

> (a) One and one-half (11/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

> (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

> (c) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary.

. . . .

81. Section 2(H) of IWC Wage Order No. 9-2001 defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

82. In general, claims for unpaid regular/minimum and overtime wages must be filed within three years of the date the wages were earned. Cal. Civ. Proc. Code § 338. However, a cause of action under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), alleged herein, extends the statute of limitations by an additional year, effectively giving employees up to four years to file a wage claim in court. *See* Cal. Bus. & Prof. Code § 17208.

83. The Joint Employer Defendants conduct, as alleged herein, violates the aforementioned regulations because the Joint Employer Defendants failed to properly compensate Plaintiff and Class Members applicable overtime premium pay for hours worked in excess of eight (8) hours per workday, forty (40) hours per workweek, and/or

hours worked on the seventh consecutive day in a workweek.

84. As alleged in more detail above, the Joint Employer Defendants denied Plaintiff and Class Members proper overtime premium compensation for overtime hours worked by, *inter alia*, requiring them to work extended hours in order to complete their job duties, but only compensating them for a set number of hours.

85. As a direct and proximate result of the Joint Employer Defendants' unlawful acts, as alleged in detail herein, Plaintiff and Class Members have been deprived, and continue to be deprived, of proper overtime premium pay for overtime hours worked in amounts to be determined according to proof.

86. Accordingly, Plaintiff and Class Members are entitled to recover, and hereby seek, the unpaid balance of the full amount of deprived overtime premium pay earned for overtime hours worked, pre- and post-judgment interest, applicable penalties, attorneys' fees, costs of suit, and any further equitable relief this Court may deem just and proper. *See* Cal. Lab. Code § 1194; *see also*, Cal. Civ. Proc. Code § 1021.5.

<u>**Third Cause of Action**</u>
**Failure to Provide Meal Periods and/or Meal Period Premium Pay**
**Cal. Lab. Code §§ 218.5, 218.6, 226.7, 512, 558.1; Cal. Code Regs. tit. 8, § 11090**
**(On behalf of Plaintiff and Members of the "Meal Period Subclass" and "Second Meal Period Subclass" as against all Defendants)**

87. Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

88. California Labor Code section 512 provides:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal

period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

89. California Labor Code section 226.7 provides in pertinent part:

(a) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission . . . .

(b) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

. . . .

90. Pursuant to California Labor Code section 558.1:

(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

(b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.

(c) Nothing in this section shall be construed to limit the definition of employer under existing law.

91. Pursuant to California Labor Code section 1198, the Industrial Welfare Commission provides the maximum hours of work and standard conditions of labor for California employees.

92. Section 11 of IWC Wage Order No. 9-2001 provides in pertinent part:

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will

29

complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

. . . .

93. California Labor Code section 218.5 provides in pertinent part:

(a) In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith . . . .

(b) This section does not apply to any cause of action for which attorney's fees are recoverable under Section 1194.

94. California Labor Code section 218.6 provides in pertinent part:

In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code [10 percent per annum], which shall accrue from the date that the wages were due and payable . . . .

95.     In general, claims for payments under California Labor Code section 226.7 for missed meal and rest period violations must be filed within three years. Cal. Civ. Proc. Code § 338. However, a cause of action under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq*.), alleged herein, extends the statute of limitations by an additional year, effectively giving employees up to four years to file a wage claim in court. *See* Cal. Bus. & Prof. Code § 17208.

96.     Premium pay for denied lawful meal and rest periods is considered a "wage" rather than a penalty. *See Murphy*, *supra,* 40 Cal. 4th at p. 1114.

97.     The Joint Employer Defendants' conduct throughout the Class Period, as alleged in more detail herein, violates the aforementioned regulations because the Joint Employer Defendants failed to properly provide Plaintiff and Class Members lawful unpaid off-duty thirty-minute meal periods, free from management control, as well as the corresponding required premium pay wages for denied meal periods.

98.     As alleged in more detail above, the Joint Employer Defendants denied Plaintiff and Class Members lawful off-duty meal periods throughout the Class Period by, *inter alia*, scheduling them for numerous time-consuming deliveries and lengthy delivery routes, and requiring them to complete all daily pick-ups, deliveries, and other work-related duties, which typically left them no time to take lawful uninterrupted meal periods in order to complete their required duties. Even when they were provided meal periods of some form during the Class Period, those periods were typically on-duty, subject to management control and continuance of work-related duties.

99.     Plaintiff and Class Members did not enter into legally binding written agreements with the Joint Employer Defendants agreeing to "on-duty" meal periods, nor does the nature of their work prevent them from being relieved of all duties during meal periods, as off-duty meal periods could be provided without affecting, damaging, or destroying the performance of their work. To the contrary, any inability to take uninterrupted off-duty meal periods was, and is, attributable solely to the Joint Employer Defendants' own insufficient staffing models, rather than the general nature of the work

performed by Delivery Drivers such as Plaintiff and Class Members. Plaintiff is informed and believes, and based thereon alleges, that all Class Members have substantially similar job responsibilities.

100. Relatedly, despite failing to provide Plaintiff and Class Members lawful uninterrupted off-duty meal periods throughout the Class Period, the Joint Employer Defendants also systematically denied Plaintiff and Class Members proper premium pay at the rate of one hour of pay at their regular pay rates for each workday they were denied an unpaid off-duty thirty-minute meal period.

101. Accordingly, Plaintiff and Class Members are entitled to recover, and hereby seek, an amount equal to one hour of their hourly pay rates per missed off-duty meal period, in addition to pre- and post-judgment interest, applicable penalties, attorneys' fees, costs of suit, and any further equitable relief this Court may deem just and proper. *See* Cal. Lab. Code §§ 226.7, 218.5, 218.6, 558.1; *see also*, Cal. Civ. Proc. Code § 1021.5.

**Fourth Cause of Action**
**Failure to Provide Rest Periods and Rest Period Premium Pay**
**Cal. Lab. Code §§ 226.7, 218.5, 218.6, 512, 558.1; Cal. Code Regs. tit. 8, § 11090**
**(On behalf of Plaintiff and Members of the "Rest Period Subclass" as against all Defendants)**

102. Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

103. California Labor Code section 226.7 provides in pertinent part:

(a) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission . . . .

(b) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or

32

recovery period is not provided.

. . . .

104. Pursuant to California Labor Code section 558.1:

(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

(b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.

(c) Nothing in this section shall be construed to limit the definition of employer under existing law.

105. Pursuant to California Labor Code section 1198, the Industrial Welfare Commission provides the maximum hours of work and standard conditions of labor for California employees.

106. Sections 12(A) and 12(B) of IWC Wage Order No. 9-2001 provide:

(A) Every employer shall authorize and permit all employees to take rest periods, which in so far as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1 /2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

. . . .

107. California Labor Code section 218.5 provides in pertinent part:

(a) In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith . . . .

(b) This section does not apply to any cause of action for which attorney's fees are recoverable under Section 1194.

108. California Labor Code section 218.6 provides in pertinent part:

In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code [10 percent per annum], which shall accrue from the date that the wages were due and payable . . . .

109. In general, claims for payments under California Labor Code section 226.7 for missed rest period violations must be filed within three years. Cal. Civ. Proc. Code § 338. However, a cause of action under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), as alleged herein, extends the statute of limitations by an additional year, effectively giving employees up to four years to file a wage claim in court. *See* Cal. Bus. & Prof. Code § 17208.

110. Premium pay for denied meal and rest periods is considered a "wage" rather than a penalty. *See Murphy, supra*, 40 Cal. 4th at p. 1114.

111. The Joint Employer Defendants' conduct throughout the Class Period, as alleged in further detail herein, violates the aforementioned regulations because the Joint Employer Defendants failed to properly provide Plaintiff and Class Members lawful uninterrupted off-duty ten-minute rest periods per four hours of work, or major fraction thereof, free from management control, as well as the corresponding required premium pay for denied rest periods.

112. As alleged in more detail above, the Joint Employer Defendants denied

Plaintiff and Class Members lawful paid off-duty rest periods throughout the Class Period by, *inter alia*, scheduling them for numerous time-consuming deliveries and lengthy delivery routes, and requiring them to complete all daily pick-ups, deliveries, and other work-related duties, which typically left them no time to take uninterrupted rest periods in order to complete their required duties. Even when they were provided rest periods of some form during the Class Period, those rest periods were typically on-duty, subject to management control and continuance of work-related duties.

113. Relatedly, despite failing to provide Plaintiff and Class Members lawful paid off-duty rest periods, the Joint Employer Defendants also systematically denied Plaintiff and Class Members proper premium compensation at the rate of one hour of pay at their regular rates of compensation for each workday they were denied an off-duty paid ten-minute rest period.

114. Accordingly, Plaintiff and Class Members are entitled to recover, and hereby seek, an amount equal to one hour of their hourly pay rates per missed rest period, in addition to pre- and post-judgment interest, applicable penalties, attorneys' fees and costs, and any further equitable relief this Court may deem just and proper. *See* Cal. Lab. Code §§ 226.7, 558.1, 218.5, 218.6; *see also*, Cal. Civ. Proc. Code § 1021.5.

<u>**Fifth Cause of Action**</u>
**Failure to Reimburse for Necessary Expenditures Incurred**
**Cal. Lab. Code §§ 2802, 510, 558.1; Cal. Code Regs. tit. 8, § 11090**
**(On behalf of Plaintiff and Members of the "Expense Reimbursement Subclass" as against all Defendants)**

115. Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

116. California Labor Code section 2802 provides:

(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be

unlawful.

(b) All awards made by a court or by the Division of Labor Standards Enforcement for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.

(c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

117. California Labor Code section 2804 mandates that this statutory right cannot be waived.

118. Pursuant to California Labor Code section 558.1:

(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

(b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.

(c) Nothing in this section shall be construed to limit the definition of employer under existing law.

119. Section 9 of IWC Wage Order No. 9 provides in pertinent part:

(A) When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color.

(B) When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the

trade or craft. This subsection (B) shall not apply to apprentices

regularly indentured under the State Division of Apprenticeship Standards.

. . . .

120.   Pursuant to California Labor Code sections 510(b) and 2802, employees required to travel between worksites during the workday must be compensated for time spent traveling and for expenses of traveling.

121.   Because an employer's liability under California Labor Code section 2802 is "a liability created by statute," in general claims for unreimbursed necessary expenditures under California Labor Code section 2802 must be filed within three years of the date the employee accrues the expense. Cal. Code Civ. Proc. § 338(a). However, a cause of action under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq*.), as alleged herein, extends the statute of limitations by an additional year, effectively giving employees up to four years to file a claim in court for restoration of money or property acquired by means of unfair competition. *See* Cal. Bus. & Prof. Code §§ 17203 and 17208.

122.   As alleged in more detail above, the Joint Employer Defendants violated the above statutes throughout the Class Period by uniformly denying Plaintiff and Class Members reimbursement for necessary expenditures incurred in direct consequence of discharging their duties and/or obeying the directions of the Joint Employer Defendants, including, *inter alia*, work uniform-related items, and necessary tools, personal communication devices,  supplies and other expenditures directly related to driving, parking and delivering packages, without any reimbursement from Defendants.

123.   As a direct and proximate result of the Joint Employer Defendants' failure to provide reimbursement for necessary expenditures incurred throughout the Class Period, Plaintiff and Class Members suffered, and continue to suffer, substantial losses related to such unreimbursed expenditures, including, but not limited to, the use and enjoyment of monies owed, lost interest on monies owed, and attorneys' fees and costs incurred to enforce their rights.

124.   In failing to provide Plaintiff and Class Members reimbursement for necessary expenditures incurred, the Joint Employer Defendants derived, and continue to derive, an

unjust and inequitable economic benefit at the expense of Plaintiff and Class Members.

125.    Accordingly, Plaintiff and Class Members are entitled to recover, and hereby seek, an amount equal to incurred necessary expenditures, pre- and post-judgment interest, applicable penalties, attorneys' fees and costs, and any further equitable relief this Court may deem just and proper. *See* Cal. Lab. Code §§ 2802, 558.1; *see also*, Cal. Civ. Proc. Code § 1021.5.

**<u>Sixth Cause of Action</u>**
**Failure to Provide Accurate Wage Statements & Keep Accurate Payroll Records**
**Cal. Lab. Code §§ 226(a), 226.3, 558.1, 1174; Cal. Code Regs. tit. 8, § 11090**
**(On behalf of Plaintiff and Members of the "Wage Statement Subclass" as against all Defendants)**

126.    Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

127.    California Labor Code section 226 provides in pertinent part:

> (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee

> . . . .

> (e)(1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four

thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

(e)(2)(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

. . . .

(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement . . . .

128.    The purpose of California Labor Code section 226 is to ensure the employees are able to determine whether or not they are being paid their wages in accordance with California law. Under section 226(h), "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees."

129.    Further, California Labor Code section 1174 provides:

Every person employing labor in this state shall . . . .

(d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years.[3]

130.    California Labor Code section 1174.5 provides:

Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174 . . . shall be subject to a civil penalty of five hundred dollars ($500).

---

[3] *See also*, Section 7 of IWC Wage Order No. 9-2001.  Cal. Code Regs. tit. 8, § 11090.

131. Pursuant to California Labor Code section 558.1:

(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

(b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.

(c) Nothing in this section shall be construed to limit the definition of employer under existing law.

132. In general, claims for penalties under California Labor Code section 226 for violations of the itemized wage statement requirements must be filed within one year, unless tolled. Cal. Civ. Proc. Code § 340(a).

133. As alleged in more detail above, the Joint Employer Defendants violated the above statutes by failing to provide Plaintiff and Class Members accurate itemized wage statements during the Class Period, which accurately accounted for all hours worked and premium pay owed. None of the wage statements provided to Plaintiff and Class Members accurately reflected all employer names and addresses, hours worked, overtime hours worked, regular hourly rates, overtime hourly rates, and/or actual gross wages and net wages earned, for the reasons detailed herein. Additionally, the Joint Employer Defendants also failed to account for premium wages owed as a result of denying Plaintiff and Class Members lawful meal and rest periods, and for necessary expenditures incurred, as alleged above.

134. Because they were not aware of what their true wages should have been and how they were calculated, Plaintiff and Class Members suffered economic loss in the form of lower wages and lost compensation, and have suffered injury by being denied accurate itemized wage statements pursuant to California Labor Code section 226(e)(2)(A).

135. Throughout the Class Period, the Joint Employer Defendants also failed, and continue to fail, to maintain accurate payroll records showing the hours worked daily by, and the wages paid to, Plaintiff and Class Members. None of the Joint Employer Defendants' payroll records pertaining to Plaintiff and Class Members accurately reflect all employer names and addresses, regular hours worked, overtime hours worked, regular hourly rates, overtime hourly rates, actual gross wages and net wages earned, meal periods, premium wages owed for denied lawful meal and rest periods, and necessary expenditures incurred.

136. As a direct and proximate result of the Joint Employer Defendants' failure to maintain accurate payroll records, Plaintiff and Class Members have suffered actual economic harm, as they have been precluded from accurately monitoring their number of hours worked, and thus inhibited from seeking all wages owed, including, but not limited to, minimum wage for all hours worked, earned overtime pay, and premium pay for denied meal and rest periods.

137. Accordingly, Plaintiff and Class Members are entitled to recover, and hereby seek, damages, pre- and post-judgment interest, applicable penalties, attorneys' fees, costs of suit, and any further equitable relief this Court may deem just and proper. *See* Cal. Lab. Code §§ 226(e), 558.1, 1174.5; *see also*, Cal. Civ. Proc. Code § 1021.5.

### Seventh Cause of Action
### Failure to Timely Pay Wages Owed
### Cal. Lab. Code §§ 201-204, 210, 2926, 2927; Cal. Code Regs. tit. 8, § 11090
### (On behalf of Plaintiff and Members of the "Waiting Time Pay Subclass" as against all Defendants)

138. Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

139. Pursuant to California Labor Code section 2926, "[a]n employee who is not employed for a specified term and who is dismissed by his employer is entitled to compensation for services rendered up to the time of such dismissal."

140. Pursuant to California Labor Code section 2927, "[a]n employee who is not employed for a specified term and who quits the service of his employer is entitled to compensation for services rendered up to the time of such quitting."

141. Pursuant to California Labor Code section 201, "[i]f an employer discharges an employee the wages earned and unpaid at the time of discharge are due and payable immediately."

142. California Labor Code section 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

143. California Labor Code section 203(a) provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which he or she so avoids payment.

144. California Labor Code section 204 provides:

> (a) All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

145. California Labor Code section 210 provides:

(a) In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows:

(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.

(2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

(b) The penalty shall be recovered by the Labor Commissioner as part of a hearing held to recover unpaid wages and penalties pursuant to this chapter or in an independent civil action. The action shall be brought in the name of the people of the State of California and the Labor Commissioner and the attorneys thereof may proceed and act for and on behalf of the people in bringing these actions. Twelve and one-half percent of the penalty recovered shall be paid into a fund within the Labor and Workforce Development Agency dedicated to educating employers about state labor laws, and the remainder shall be paid into the State Treasury to the credit of the General Fund.

146. Section 20 of IWC Order No. 9 provides in pertinent part:

(A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of:

(1) Initial Violation — $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.

(2) Subsequent Violations — $100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.

(3) The affected employee shall receive payment of all wages recovered.

. . . .

43

147. In general, claims for waiting time penalties under California Labor Code section 203 must be filed within three years of the termination. Cal. Lab. Code § 203.

148. The Joint Employer Defendants violated the above statutes by failing to promptly pay Plaintiff and Class Members all earned wages due each and every pay period, immediately upon termination, and/or within 72 hours upon resignation.

149. During the Class Period, the Joint Employer Defendants violated, and continue to violate Section 20 of IWC Wage Order No. 9 by failing to compensate Plaintiff and Class Members regular pay and minimum wages, overtime premium wages, premium pay for denied meal and rest periods (wages), reimbursement for incurred necessary expenditures, and other wages due to Plaintiff and Class Members each pay period, as alleged in more detail herein.

150. Further, the Joint Employer Defendants violated, and continue to violate, California Labor Code sections 210, 202, 2926, and 2927 by failing to compensate former employees (including Plaintiff and Class Members no longer working for the Joint Employer Defendants) for services rendered up to the time of dismissal or quitting.

151. In addition, Plaintiff was not paid all wages owed upon termination of employment. Although California Labor Code sections 202 and 2927 require an employer to pay an employee within 72 hours all compensation for services rendered up to the time of quitting, Plaintiff has still not been provided with all final pay for all wages due and owing, including premium and overtime pay, in an amount according to proof.

152. Accordingly, Plaintiff and Class Members are entitled to recover, and hereby seek, applicable penalties, attorneys' fees, costs of suit, and any further equitable relief this Court may deem just and proper. *See* Cal. Lab. Code §§ 210 and 218.6; *see* also, Cal. Civ. Proc. Code § 1021.5; Cal. Code Regs. tit. 8, § 11090. Plaintiff and Class Members who no longer work for the Joint Employer Defendants are further entitled to, and hereby seek, waiting-time penalties in amounts equal to thirty times their respective daily wages. *See* Cal. Lab. Code § 203.

///

## Eighth Cause of Action
### Failure to Provide Adequate Contracting Compensation in Violation of Labor Code § 2810(a)
### (On behalf of Plaintiff and Members of "The Labor Contracting Subclass" as against all Defendants)

153. Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

154. While Plaintiff contends that under the circumstances of joint control the Plaintiff Class is deemed jointly employed by AMAZON.COM, LLC, who provided, directed and controlled all major aspects of job duties, procedures and responsibilities, including assignments of position, direct supervision of job and work performed and following policies implemented and directed by all the Joint Employer Defendants, in the alternative to being subject to joint employment, Plaintiff alleges that the Joint Employer Defendants, and each them, entered into subcontracting labor arrangements that each and the other knew or should have known provided insufficient consideration for the subcontracting entities with DOES 1-500 and did not provide them with the ability to (1) pay for all hours worked, (2) pay minimum wages and/or overtime wages as required by law and alleged above, (3) failure to provide wage statements or accurate wage statements, (4) failure to comply with all timing requirements for pay, both to current and former employees and (5) failure to pay for all reasonable and necessary work expenditures.

155. Plaintiff fully complied with Labor Code § 2810.3 Notice requirements as shown in attached **Exhibit 1**, which was sent on March 30, 2017, and therefore has exhausted all such requirements to proceed under Labor Code § 2810, *et seq*. Based on information and belief, Plaintiff alleges that none of the Joint Employer Defendants are entitled to any exemption or exclusion from coverage under the statute and that in fact, the labor contracting protections are directly applicable to delivery drivers in a subcontractor or labor contracting setting.

156. Labor Code § 2810(a) provides that "A person entity may not enter into a contract or agreement for labor or services with …[a] security guard contractor where the

person or entity knows or should know that the contract or agreement does not include funds sufficient to allow the contractor to comply with all applicable local, state and federal laws or regulations governing the labor or services to be provided."

157. Based on information and belief, Plaintiff alleges that the Joint Employer Defendants failed to comply with Labor Code § 2810(a) and that at no time did the Joint Employer Defendants in their contracts or agreements make any effort to comply with the facts and requirements to be entitled to any presumption that the contracts and/or agreements complied with safe harbor provisions of Labor Code § 2810(b) or the conditions necessary as required by Labor Code §§ 2810(d)(1)-(10).

158. As a direct and proximate result of the Joint Employer Defendants' collective failure to comply with the Labor Contracting statute, Plaintiff and the proposed "Labor Contractor Subclass" suffered loss of wages and were not reimbursed expenses in an amount according to proof.

159. Further, as permitted by Labor Code § 2810(g)(1), Plaintiff and the "Labor Contracting Subclass" are aggrieved employees and are entitled, after notice, to file an action to recover the "greater of all his or her actual damages or two hundred and fifty dollars ($250) per employee per violation for an initial violation and one thousand dollars ($1,000) per employee for each subsequent violation, and upon prevailing in an action brought pursuant to this section, may recovers costs and reasonable attorney's fees."

<u>**Ninth Cause of Action**</u>
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiff and Class Members)**

160. Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth in this Complaint with the same force and effect, and further allege as follows:

161. Pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., "specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." Cal. Bus. & Prof. Code § 17202.

162. "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

163. "[T]he term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." Cal. Bus. & Prof. Code § 17201.

164. California Business & Professions Code section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been required by means of such unfair competition.

165. An action to enforce any cause of action under the UCL must be commenced within four years after the cause of action accrued. Cal. Bus. & Prof. Code § 17208.

166. California Labor Code § 90.5(a) declares:

> It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

167. The Joint Employer Defendants' acts and practices, as alleged in detail herein, also constitute "<u>unfair</u>" business acts and practices within the meaning of the UCL in that the Joint Employer Defendants' conduct is substantially injurious to employees, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Such conduct is ongoing and continues to this date. The Joint Employer Defendants had, and have,

reasonable alternatives to them, such as complying with all governing wage and hour laws.

168.    By and through the business acts and practices as alleged herein, the Joint Employer Defendants unjustly obtained valuable property, money, and services from Plaintiff and Class Members, forcing them to work under substandard conditions and depriving them of valuable rights and benefits guaranteed by law, all to their detriment and to the unjust benefit of the Joint Employer Defendants, so as to allow the Joint Employer Defendants to gain an unfair competitive advantage over law-abiding employers and competitors. Plaintiff and Class Members lost money and/or property as a result of the Joint Employer Defendants' unfair, unlawful, and/or fraudulent business practices, as alleged herein, including, but not limited to, lost wages and interest, unreimbursed necessary expenditures, and attorneys' fees and costs incurred to enforce their rights.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and Class Members pray for judgment against the Joint Employer Defendants, as follows:

1.    For an order certifying that this action is properly brought and may be maintained as a class action pursuant to California Code of Civil Procedure § 382;

2.    For an order appointing Plaintiff as class representative of the Class, and the Law Offices of Ronald A. Marron, APLC and Cohelan Khoury & Singer as counsel for the Class;

3.    For an order requiring the Joint Employer Defendants to bear the costs of Class notice;

4.    For an order bifurcating the action into liability and damages stages, or as otherwise efficient for the administration of justice;

5.    On the First Cause of Action, for all unpaid regular wages for unpaid time at the applicable minimum wage, including liquidated damages as required by Labor Code §§ 1194-1197 and IWC Wage Order 9-2001, § 4 for the "Minimum Wage Subclass" in an amount according to proof;

6.    On the Second of Action, for all unpaid overtime and double-time wages as

required by Labor Code §§ 1194-1197 and IWC Wage Order 9-2001, § 3 for the "Overtime Subclass" in an amount according to proof;

7.     On the Third Cause of Action for unpaid Premium Wages for noncompliant meal periods at one hour of regular rate of pay to each "Meal Period" and "Second Meal Period" Subclass member pursuant to Labor Code §§ 226.7, 512, and IWC Wage Order 9-2001, § 11, in an amount according to proof;

8.     On the Fourth Cause of Action, for unpaid Premium Wages for noncompliant rest periods at one hour of pay at the employee's regular rate of pay to each "Rest Period" Subclass member pursuant to Labor Code § 226.7 and IWC Wage Order 4-2001, § 12 in an amount according to proof;

9.     On the Fifth Cause of Action, for damages and restitution for failure to pay or reimburse for all reasonable and necessary business expenditures for the members of the "Expense Reimbursement Subclass" as required by Labor Code § 2802 and IWC Wage Order 9-2001, §§ 8-9, in an amount according to proof;

10.     On the Sixth Cause of Action, for statutory damages of up to 30 days of pay at the regular rate of pay for failing to timely remit payment of wages to former employees in the "Waiting Time Subclass" pursuant to Labor Code §§ , in an amount according to proof;

11.     On the Seventh Cause of Action, for statutory damages and penalties under Labor Code sections 226(e) and (g), to the extent provided by law, up to a maximum of $4,000.00 per "Wage Statement Subclass" Member, in an amount according to proof;

12.     On the Eighth Cause of Action, as an alternative theory of recovery, for payment of all wages due and compliance with all Labor Code provisions as alleged herein as against AMAZON.COM, LLC and jointly and severally with Contracting entities for all wages, penalties, interest, costs and reasonable attorney's fees pursuant to Labor Code § 2810, *et seq.*, to the extent permitted by law for failure to provide sufficient consideration to Labor Contractors in order to meet requirements of local delivery driver services wages, expenses and compliance with the Labor Code for the "Labor Contracting Subclass" in an amount according to proof;

13. On the Ninth Cause of Action, for the UCL Subclass, to recover all restitution for minimum wages, overtime wages, meal and rest period premiums and any other form of wages, including but not limited to vacation wages and reasonable and necessary business expenses that were not paid to members of the "UCL Subclass" during the Class Period as a result of either Joint Employer conduct of all Defendants, and/or the result of the Primary Contractor, AMAZON, in failing to comply with Labor Code § 2810, *et seq.*, after 30-day notice and opportunity to cure. Said restitution may be calculated in accordance with California Business and Professions Code sections 17203 and 17204, including trial of UCL claims by the Court in equity before legal claims, in an amount according to proof;

14. Pre- and post-judgment interest at the legal rate of 10% in the State of California for all unpaid wages and expenses due, in an amount according to proof;

15. Reasonable attorneys' fees and costs of suit to the extent permitted by Labor Code §§ 1194, 1404, 2802-2804, 2810 and/or California Code of Civil Procedure § 1021.5;

16. An accounting of the Joint Employer Defendants' books and records to determine damages, restitution, and/or interest on all monies due; and

17. Any such other and further relief as this Court may deem necessary, just, and/or proper.

## VII. **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on all causes of action, claims, and issues so triable.

**LAW OFFICES OF RONALD A. MARRON, APLC**
**COHELAN KHOURY & SINGER**

Dated: January 5, 2018            By: */s/ J. Jason Hill_____*
                                         J. Jason Hill, Esq.
                                         Attorneys for Plaintiff JASMINE MILLER, individually
                                         and on behalf of all others similarly situated

# EXHIBIT 1

# COHELAN KHOURY & SINGER
A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

TIMOTHY D. COHELAN, APLC*
ISAM C. KHOURY, APC
DIANA M. KHOURY, APC
MICHAEL D. SINGER, APLC•

(*Also admitted in the District of Columbia)
(•Also admitted in Colorado)

ATTORNEYS AT LAW

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000
www.ckslaw.com

JEFF GERACI ∆
J. JASON HILL†
JANINE R. MENHENNET

(† Also admitted in Illinois)
(∆ Of Counsel)

March 30, 2017

## VIA CERTIFIED U.S. MAIL (Return Receipt requested)

Amazon.com LLC
c/o CSC – Lawyers Incorporating Service
Registered Agent for Service of Process
2710 Gateway Oaks Dr., Ste. 150N
Sacramento, CA 95833

**Re:** **NOTICE OF LIABILITY PURSUANT TO CAL. LABOR CODE § 2810 FOR ILLEGAL LABOR CONTRACTING BY A CLIENT EMPLOYER**

Dear Employers of Jasmine Miller:

Our office, along with the Law Offices of Ronald A. Marron, APLC, has been retained to represent Jasmine Miller (hereinafter "Claimant"), who is a former joint employee of AMAZON.COM LLC, a Delaware Limited Liability Company, and an Amazon.com LLC subcontractor that is now defunct (hereinafter "Employers"), in connection with a proposed class and representative action under California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code §§ 2698, *et seq.*, regarding violations of applicable employment laws.

Please allow this to serve as required notice to inform you that our client, Jasmine Miller, was engaged by a "client employer" and/or "labor contractor" who failed to comply with Cal. Labor Code §§ 2810.3(b)(1) and/or (b)(2) in the failure to pay all wages due.

The specific factual basis for the claim is set forth in the attached notices to the California Labor and Workforce Development Agency (LWDA Case No.: LWDA-CM-157245-16) and are expressly incorporated herein by this reference.

Please contact the undersigned with any questions.

Sincerely,
COHELAN KHOURY & SINGER
LAW OFFICES OF RONALD A. MARRON

J. Jason Hill, Esq.

Enclosures: PAGA Notice Dated September 7, 2016
Amended PAGA Notice Dated March 30, 2017

Re: Amazon.com LLC
Notice Pursuant to Labor Code § 2810.3(d)
March 30, 2017
P a g e | 2

cc: Via Email Only ·

LAW OFFICES OF RONALD A. MARRON, APLC
Ronald A. Marron, Esq.
*ron@consumersadvocates.com*
William B. Richards, Jr., Esq.
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103

# EXHIBIT 2

TIMOTHY D. COHELAN, APLC*
ISAM C. KHOURY, APC
DIANA M. KHOURY, APC
MICHAEL D. SINGER, APLC•

(*Also admitted in the District of Columbia)
(•Also admitted in Colorado)

ATTORNEYS AT LAW

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000
www.ckslaw.com

JEFF GERACI ∆
J. JASON HILL†
JANINE R. MENHENNET

(† Also admitted in Illinois)
(∆ Of Counsel)

March 30, 2017

### *AMENDED* NOTICE OF LABOR CODE VIOLATIONS PURSUANT TO CAL. LABOR CODE SECTION 2699.3

### NOTICE VIA ONLINE SUBMISSION (https://dir.tfaforms.net/128)

California Labor and Workforce Development Agency ("LWDA")

### NOTICE VIA CERTIFIED U.S. MAIL (Return Receipt requested)

Amazon.com LLC
c/o CSC – Lawyers Incorporating Service
Registered Agent for Service of Process
2710 Gateway Oaks Dr., Ste. 150N
Sacramento, CA 95833

> **Re:** **Jasmine Miller, on behalf of herself and all "aggrieved" hourly paid California-based employees of AMAZON.COM LLC, a Delaware Limited Liability Company;**
>
> ***AMENDED* Notice pursuant to California Labor Code sections 2698, *et seq.*, the Private Attorneys General Act of 2004 ("PAGA")**
>
> **LWDA Case No.: LWDA-CM-157245-16**

Dear PAGA Administrator:

Our office, along with the Law Offices of Ronald A. Marron, APLC, has been retained to represent Jasmine Miller (hereinafter "Claimant"), who is a former joint employee of AMAZON.COM LLC, a Delaware limited liability company (hereinafter "Employers"), in connection with a representative action under California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code §§ 2698, *et seq.*, regarding violations of applicable employment laws.

Please allow this to serve as an Amendment to the initial PAGA Notice submitted on September 7, 2016, LWDA Case No.: LWDA-CM-157245-16. Specifically, in addition to the allegations, facts, and theories set forth in the prior PAGA Notice Letter (attached and incorporated herein), Claimant also seeks to pursue recovery of civil penalties against the Employers under Cal. Labor Code §§ 2810-2810.3 for "client employer" and "labor contractor" liability for failure to pay wages.

Re: Amazon.com LLC
Amended PAGA Notice to the LWDA
March 30, 2017
P a g e | 2

### *Amended* Factual and Legal Basis for PAGA Violations for Recovery of Civil Penalties

In addition to the facts and theories outlined in the prior PAGA Notice of September 7, 2016, Claimant contends and alleges that both Employers in this case violated Cal. Labor Code §§ 2810-2810.3, and failed to pay wages due. The sections provide, in pertinent part:

> 2810. (a) A person or entity shall not enter into a contract or agreement for labor or services with a construction, farm labor, garment, janitorial, security guard, or warehouse contractor, where the person or entity knows or should know that the contract or agreement does not include funds sufficient to allow the contractor to comply with all applicable local, state, and federal laws or regulations governing the labor or services to be provided.
>
> .....
>
> (h) The phrase "construction, farm labor, garment, janitorial, security guard, or warehouse contractor" includes any person, as defined in this code, whether or not licensed, who is acting in the capacity of a construction, farm labor, garment, janitorial, security guard, or warehouse contractor.
>
> .....
>
> (j) For the purposes of this section, "warehouse" means a facility the primary operation of which is the storage or distribution of general merchandise, refrigerated goods, or other products.
>
> Section 2810.3 (a) provides in pertinent part:
>
> (1) (A) "Client employer" means a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor.
>
> .....
>
> (2) "Labor" has the same meaning provided by Section 200.
> (3) "Labor contractor" means an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business.
>
> .......
>
> (b) A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for both of the following:
> (1) The payment of wages.
> (2) Failure to secure valid workers' compensation coverage as required by Section 3700.....
>
> .....
>
> (d) At least 30 days prior to filing a civil action against a client employer for violations covered by this section, a worker or his or her representative shall notify the client employer of violations under subdivision (b).

......

(m) A waiver of this section is contrary to public policy, and is void and unenforceable.
........

(p) This section shall not be interpreted to impose liability on the following:

(1) A client employer that is not a motor carrier of property based solely on the employer's use of a third-party motor carrier of property with interstate or intrastate operating authority to ship or receive freight.

(2) A client employer that is a motor carrier of property subcontracting with, or otherwise engaging, another motor carrier of property to provide transportation services using its own employees and commercial motor vehicles, as defined in Section 34601 of the Vehicle Code.

(3) A client employer that is not a household goods carrier based solely on the employer's use of a third-party household goods carrier permitted by the Public Utilities Commission pursuant to Chapter 7 (commencing with Section 5101) of Division 2 of the Public Utilities Code to move household goods.

(4) A client employer that is a household goods carrier permitted by the Public Utilities Commission pursuant to Chapter 7 (commencing with Section 5101) of Division 2 of the Public Utilities Code subcontracting with, or otherwise engaging, another permitted household goods carrier to provide transportation of household goods using its own employees and motor vehicles, as defined in Section 5108 of the Public Utilities Code.

(5) A client employer that is a cable operator as defined by Section 5830 of the Public Utilities Code, a direct-to-home satellite service provider, or a telephone corporation as defined by Section 234 of the Public Utilities Code, based upon its contracting with a company to build, install, maintain, or perform repair work utilizing the employees and vehicles of the contractor if the name of the contractor is visible on employee uniforms and vehicles.

(6) A motor club holding a certificate of authority issued pursuant to Chapter 2 (commencing with Section 12160) of Part 5 of Division 2 of the Insurance Code when it contracts with third parties to provide motor club services utilizing the employees and vehicles of the third-party contractor if the name of the contractor is visible on the contractor's vehicles.

Furthermore, Wage Order 9, applicable to Claimant, provides:

(G) "Employer" means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

(P) "Transportation Industry" means any industry, business, or establishment operated for the purpose of conveying persons or property from one place to another whether by rail, highway, air, or water, and all operations and services in connection therewith; and also includes storing or warehousing of goods or property, and the repairing, parking, rental, maintenance, or cleaning of vehicles

The DLSE Guidelines (http://www.dir.ca.gov/dlse/WhichIWCOrderClassifications.pdf) provide:

"A business is classified according to the main purpose of the business except in IWC Order 5 (see section below on Incidental Housekeeping Activities). Large businesses may conduct a variety of operations and it may appear initially that different industry orders could apply. However, when those operations are part of the main business, only one order will apply.

**Example:**
A business's main purpose is operating a warehouse and incidental thereto employs a separate sales staff to sell goods. IWC Order 9 covers this operation even though sales are covered under IWC Order 7 because the main purpose of the business is to operate a warehouse."

Here is a list of examples of covered industries and occupations under Wage Order 9 by DLSE:

- Courier service...
- Moving and storage warehousing (of commodities moved)
- Parcel delivery service
- Storage and moving warehouse (of commodities moved)
- Transportation companies
- Warehousing and storage (of commodities moved)

The DLSE also provides the following:

Note: Many kinds of industries employ people to operate and maintain vehicles and warehouses; transportation companies under Order 9 have that as their main purpose. A hotel employee who drives a van is under Order 5; a mechanic employed by a retail chain is under Order 7; a mini-storage facility not connected with a transportation firm is under Order 5; the building of vehicles, including ships, is under Order 1; a farm employee who delivers farm products to the first point of distribution is under Order 14, but a trucking company which is in the business of trucking mostly farm products is under Order 9; employees who balance and align tires are under Order 9, if their employer is in the business of providing that service but under Order 7 if their employer is basically in the business of selling tires.

Here, at all times relevant within the applicable limitations period, Claimant, as an alternative to being jointly employed by Amazon.com LLC and other subcontractors as a warehouse associate and local parcel delivery driver operating in the State of California, and for purposes of this allegation, contends that Amazon.com LLC was the "client employer." The labor contractor is now defunct. At all times, Ms. Miller's work was directed and controlled by Amazon.com, LLC.

During Claimant's tenure with the "client employer" and "labor contractor," wages were not paid, including meal and rest period premiums, and overtime pay, and labor was sometimes provided

Re: Amazon.com LLC
Amended PAGA Notice to the LWDA
March 30, 2017
P a g e | 5

off-the-clock without payment of the required minimum wage. Claimant is informed and believes that Amazon.com LLC, as "client employer," failed to comply with all material aspects of Cal. Labor Code §§ 2810-2810.3, and is liable for unpaid wages and civil penalties of its labor contractors. Amazon.com, LLC engages in a pattern and practice of utilizing subcontractors for local delivery driver needs and knows, or should have known, that many of the operations of the contractors blatantly fail to comply with California law and are undercapitalized to do so.

Based on information and belief, Claimant does not qualify for any exemption from the Labor Contracting Act as outlined by Cal. Labor Code § 2810.3(p)(1)-(6), and was at all times a person for whom the Labor Contracting statute was intended to protect by the California Legislature. For herself and other aggrieved employees of labor contractors for whom Amazon.com LLC was the "client employer," Claimant will seek recovery of PAGA civil penalties pursuant to Cal. Labor Code § 2699 in an amount assessed per violation for each aggrieved employee for each workweek within the applicable limitations period. Further, to the extent permitted by the PAGA, Claimant will seek, and Employers are liable for, the civil penalty for "underpaid wages" as specifically authorized by Cal. Labor Code section 558(a). PAGA specifically authorizes recovery of civil penalties through a representative action, inclusive of penalties in Cal. Labor Code § 558, which states:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

Claimant intends to file and/or amend a PAGA Representative Action in an appropriate California Superior Court alleging the aforementioned violations within 65 days of this Amended Notice. Claimant awaits notice from the LWDA as to whether it intends to pursue the matter, or whether the Employers will elect to cure remedies.

Sincerely,
**COHELAN KHOURY & SINGER**
**LAW OFFICES OF RONALD A. MARRON**

Jason Hill, Esq.

Enclosure: PAGA Notice Dated September 7, 2016

Re: Amazon.com LLC
Amended PAGA Notice to the LWDA
March 30, 2017
P a g e | 6

cc: Via Email Only

LAW OFFICES OF RONALD A. MARRON, APLC
Ronald A. Marron, Esq.
*ron@consumersadvocates.com*
William B. Richards, Jr., Esq.
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103

651 Arroyo Drive
San Diego, CA 92103

Tel: 619.696.9006
Fax: 619.564.6665

September 7, 2016

**NOTICE VIA: ONLINE SUBMISSION (PAGAfilings@dir.ca.gov)**

**PAYMENT VIA:  CERTIFIED U.S. MAIL (receipt acknowledgment with signature requested)**

Department of Industrial Relations
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

**VIA: CERTIFIED U.S. MAIL (receipt acknowledgment with signature requested)**

A-1 Express Delivery Service, Inc. d/b/a 1800-Courier, Inc.
c/o C T Corporation System
Registered Agent for Service of Process
818 West Seventh St., Ste. 930
Los Angeles, California 90017

Amazon.com, LLC
410 Terry Ave. N.
Seattle, WA 98109

Amazon.com, LLC
c/o CSC – Lawyers Incorporating Service
Registered Agent for Service of Process
2710 Gateway Oaks Dr., Ste 150N
Sacramento, California 95833

> **RE:**   *Jasmine Miller v. A-1 Express Delivery Service, Inc. d/b/a 1800-Courier, Inc., et al.*

Dear PAGA Administrator:

The Law Offices of Ronald A. Marron, APLC, along with Cohelan Khoury & Singer, have been retained to represent Jasmine Miller ("Ms. Miller") in her potential action against A-1 Express Delivery Service, Inc. d/b/a 1800-Courier, Inc. and Amazon.com, LLC (collectively, "Defendants"), individually and on behalf of all other similarly aggrieved Delivery Drivers (our "client"). Pursuant to California Labor Code section 2699.3, this letter constitutes written notice of Defendants' Labor Code violations, and of our client's intent to recover statutory penalties under California's Private Attorney General Act of 2004

("PAGA"). Cal. Lab. Code §§ 2698, *et seq.* A copy of this letter is also being sent to Defendants via certified mail at the addresses listed above.

Founded in or about 1997, A-1 Express Delivery Service, Inc. d/b/a 1800-Courier, Inc. ("1800-Courier") is a self-proclaimed nationwide leader in same day delivery and logistics solutions for companies across the country, registered to do business in the state of California (Cal. Entity No.: C3578576) with its national headquarters located in Atlanta, Georgia. Specifically, 1-800 Courier offers a wide range of same-day messenger, courier, logistics, and distribution services for more than 1500 active customers, consisting of small local firms to large national corporations (including Fortune 500 companies). 1-800 Courier also offers local and nationwide courier and delivery, scheduled delivery, bike messenger, emergency/expedited delivery, congressional line standing, visa and passport application, next flight out, freight/trucking, less than truck load, and local freight services; and white glove, live animal, and medical/specimen delivery services. According to its website, "1-800 Courier delivers almost anything, anyplace and anytime - FAST! 24/7, all 365 days of the year."[1] In 2007, Mark McCurry and Lon Fancher (co-founders of A-1 Express Delivery Services, Inc.) acquired the rights to www.1-800courier.com and used that platform to market to national businesses which require a nationwide footprint.

Amazon.com, Inc.—the largest internet-based retailer in the United States—is a publically traded American electronic commerce and cloud computing company (NASDAQ: AMZN) incorporated under the laws of the state of Delaware, with its company headquarters located in Seattle, Washington. Amazon.com Inc. is licensed to do business, and does significant business, in the state of California under the name Amazon.com LLC (Cal. Entity No.: 201227310095). Amazon.com, LLC is hereinafter referred to as "Amazon."

From approximately April 2016 through July 2016, Ms. Miller was employed with 1800-Courier as a Delivery Driver, providing package pick-up and delivery services exclusively for Amazon out of Amazon's hub/terminal warehouse located at 990 Beecher Street in San Leandro, California 94577.

## Willful Misclassification

Ms. Miller was jointly employed by 1800-Courier and Amazon from approximately April 2016 until her termination in or around July 2016. Although any person rendering service for another is generally presumed to be an employee (*see* California Labor Code section 3357), Amazon willfully and knowingly misclassified Ms. Miller and other Delivery Drivers as independent contractors, in violation of California Labor Code section 226.8. However, Ms. Miller was actually a joint employee of both 1800-Courier and Amazon rather than an independent contractor because, *inter alia*: Amazon had control or the right to control Ms. Miller's work and the manner and means in which it was performed; retained pervasive control over the business operation as a whole; had the power to discipline and fire Ms. Miller and other Delivery Drivers; exercised control over their work hours and pay structures; provided training and resources needed to perform Amazon's work; and because Ms. Miller and other Delivery Drivers performed work that is part of the regular business of Amazon.

Concerning the level of control over Delivery Drivers' work, Amazon (in conjunction with 1800-Courier) assigns the routes/locations Delivery Drivers are assigned to, as well as the workload and number of deliveries to be completed each day. And, Delivery Drivers must deliver each package within a specific

---

[1] http://www.1-800courier.com/about.asp (last visited September 7, 2016)

window of time, negotiated by Amazon and its customers. Ms. Miller and other Delivery Drivers work out of an assigned Amazon hub or warehouse, to which they are required to report to end complete pre-delivery duties before commencing their daily deliveries. Delivery Drivers must also adhere to Amazon's company policies and procedures, such as those related to customer service and interaction; background and criminal history qualifications; honesty standards; driving and delivery standards; work uniforms and personal appearance; drug, alcohol, and tobacco use; workplace harassment; weapons and dangerous materials; progressive discipline; and concessions (undelivered packages, damaged packages, lost and stolen packages, etc.); among others. And, all Delivery Drivers must meet Amazon's safety and training requirements. Moreover, Amazon requires Delivery Drivers, including Ms. Miller, to comply with strict uniform requirements, which includes, among other items, a company shirt affixed with the Amazon logo, an Amazon hat, black pants, black shoes, and a safety vest. Delivery Drivers are also required to drive company vehicles affixed with an Amazon logo decal for pick-up and delivery services. Finally, Amazon has the power to train, discipline, and fire Delivery Drivers (or terminate their contracts). Indeed, Ms. Miller and other Delivery Drivers dealt with Amazon supervisorial employees on a regular basis and routinely had to comply with their orders and directions, including those relating to, *inter alia*, the amount of time allotted for pick-ups and deliveries, concessions, and pre-delivery duties.

Regarding control over work hours and schedules, although Amazon does not expressly dictate working hours, it structures Delivery Drivers workloads to ensure that they work approximately 10 to 12 hours each workday, and also sets Delivery Drivers' delivery routes, schedules, and deadlines. Failure to comply with these imposed schedules and deadlines subjects Delivery Drivers, such as Ms. Miller, to potential disciplinary measures, up to and including termination, contract cancellation, and/or non-renewal of contracts.

Concerning control over wages and compensation, Amazon uses independent contractors rather than employees to avoid the wage and hour regulations and protections afforded to employees and keep costs down. Delivery Drivers' compensation structures are dependent upon the value of contracts between Amazon and 1800-Courier. Amazon also unilaterally determines, among others, customer delivery fees, charges (i.e., waiting time charges), discount rates, refunds and guarantees, and liability and cargo insurance limits.

In regards to training, Amazon provides Delivery Drivers with training (i.e., training for safety, mobile delivery software systems, time efficiency, accident prevention, concessions, etc.). In addition to company training, Amazon also provides its Delivery Drivers with many of the tools necessary to perform their work-related duties, including, but not limited to: distribution hubs, terminals, and/or warehouses to work out of; marked Amazon vehicles; handheld scanners preloaded with package and customer information; certain work uniform-related items (i.e., Amazon company shirts and hats); delivery management system software, GPS tools, and turn by turn directions; route and delivery schedules; customer payment systems; shipping package options; and other resources. To compliment these services and tools, Amazon also provides its customers with access to online messenger system services, customer service and support call centers, online and telephone payment and processing services, online shipment tracking and monitoring services, shipment status notifications, and more.

Finally, our client's work is part of the regular business of 1800-Courier and Amazon (package pick-up and delivery services), both of which retained pervasive control over the joint business operation as a whole, and jointly benefitted financially therefrom. Despite these restrictions, Amazon knowingly and

3

·willfully misclassified Ms. Miller and other Delivery Drivers as independent contractors in order to avoid the costs associated with the rights afforded to employees under federal and California law—all to Amazon's benefit.

· Accordingly, Amazon is liable to our client for civil penalties for the period of time in which it willfully misclassified Ms. Miller and other Deliver Drivers as independent contractors rather than employees. *See* Cal. Labor Code §§ 226.8, 3357.

## Failure to Pay Overtime Premium Pay

During her employment with 1800-Courier and Amazon, Ms. Miller worked full-time—typically, approximately 10 to 12 or more hours per day, including overtime, five days per week—commencing at approximately 8 a.m. or earlier each morning. Ms. Miller earned a fixed regular hourly pay rate of $15.00 per hour. Her clock-in/clock-out times, as well as meal periods (if any), were logged and tracked through an app. on her personal cell phone (iSolved Time, from the makers of TimeForce). However, upon information and belief, despite regularly working more than 8 hours in a workday and/or 40 hours in a workweek, Ms. Miller and other Delivery Drivers were denied proper overtime premium compensation for overtime hours worked. Because Ms. Miller no longer has access to her iSolved phone app. account, she is effectively precluded from reviewing her time sheets and wage statements in order to determine the extent of unpaid overtime premium compensation, as well as potential unpaid compensation for regular hours worked.

Accordingly, by failing to provide proper overtime premium compensation for overtime hours worked, Defendants are jointly liable to our client for the full amount of overtime premium pay owed, plus interest, reasonable attorneys' fees, costs of suit, and civil penalties. Cal. Lab. Code §§ 510, 558, 1194, 1198; *see also* IWC Wage Order No. 9-2001 § 3.

## Failure to Provide Premium Pay for Denied Lawful Meal and Rest Periods

During her employment with Defendants, our client was regularly denied a lawful uninterrupted thirty-minute meal period for work periods of more than five hours in a day, and a second uninterrupted meal period for work periods of more than 10 hours in a day—in violation of California Labor Code sections 512 and 1198, as well as section 11 of IWC Wage Order No. 9-2001. Our client was also denied one hour of premium pay at her regular hourly pay rate for each workday a lawful meal period was not provided, in violation of California Labor Code section 226.7 and section 11 of IWC Wage Order No. 9-2001. In addition to lawful meal periods, our client was also regularly denied lawful uninterrupted ten-minute rest breaks for every four hours worked, as well as one hour of premium pay at her regular hourly pay rate for each workday a lawful rest break was not provided, in violation of California Labor Code sections 226.7 and 1198, as well as section 12 of IWC Wage Order No. 9-2001.

Specifically, Defendants denied Ms. Miller and other Delivery Drivers mandated lawful uninterrupted meal and rest periods by, *inter alia*, scheduling them for numerous time-consuming deliveries and lengthy delivery routes that prevented them from completing their daily deliveries if meal and rest periods were taken. If Ms. Miller failed to complete all scheduled daily deliveries, she would be subject to discipline (i.e., verbal warnings, write-ups, etc.), up to and including termination, contract cancellation, and/or non-renewal of contracts. In fact, Ms. Miller has been reprimanded on several occasions for working "too slow," including verbal warnings and even an unpaid suspension. Thus, Ms. Miller was routinely prevented from taking uninterrupted meal and rest periods in order to complete her deliveries and avoid

such potential disciplinary measures. Even on the rare occasion our client was provided meal and/or rest periods of some sort, they were typically on-duty and subject to management control and continuance of work-related duties. In fact, there were instances in which Ms. Miller spoke with dispatch at the warehouse while working during her breaks. To the best of her recollection, Ms. Miller never signed any on-duty meal period agreement or off-duty meal period waiver. And if she did, such agreements were not voluntary, in that they were a condition of employment and non-negotiable; nor enforceable, in that the nature of work did not prevent our client from being provided uninterrupted meal periods. Any circumstances that would have prevented our client from taking uninterrupted meal periods was due solely to insufficient staffing models, rather than the general nature of the work, implicating further potential violations of California Labor Code sections 2810, *et seq.* by both Defendants.

Accordingly, Defendants are jointly liable to our client for premium pay for denied meal and rest periods, civil penalties, reasonable attorneys' fees and costs, and interest pursuant to California Labor Code sections 226.7, 558, 218.5, 218.6, and 2810, *et seq.*, as well as IWC Wage Order No. 9-2001 §§ 11 and 12, as made applicable through California Labor Code section 1198.

## Failure to Reimburse for Necessary Expenditures Incurred

While working for Defendants, Ms. Miller and other Delivery Drivers were required to, and did, personally pay for several expenses that are necessary to their performance and work-related duties, without reimbursement. For instance, as part of its work uniform policy, Defendants required our client and other Delivery Drivers to wear a company shirt with the Amazon logo affixed, and Amazon hat, a safety vest, black pants, and black shoes; but only provided the shirt, hat, and vest, thereby requiring our client to personally pay for the other necessary work uniform-related items on several occasions. *See* IWC Wage Order No. 9-2001 § 9 (Uniforms and Equipment). Ms. Miller was also required to carry and use her personal cell phone for recording her hours worked through the iSolved Time app., scheduling purposes, receiving orders to re-deliver packages, taking pictures of damaged packages or non-functioning scanners, and maintaining communication with dispatch and the warehouse, as well as customers—all without any reimbursement of *any* kind.

Accordingly, Defendants are jointly liable under California Labor Code sections 2802, 2804, and 510 for failing to reimburse our client for all necessary expenditures incurred in direct consequence of the discharge of work duties and/or obedience to employer directions, including attorneys' fees and costs incurred to enforce her rights.

## Failure to Provide Accurate Itemized Wage Statements and Maintain Accurate Payroll Records

1800-Courier provided Ms. Miller wage statements through the iSolved Time app. every two weeks. Likewise, Ms. Miller was compensated for her work hours every two weeks via direct deposit. However, as a result of Defendants' unlawful employment practices, as alleged herein, the paystubs/wage statements provided to Ms. Miller and other Delivery Drivers failed to accurately list all employers (i.e., Amazon), total hours worked, regular pay, overtime pay, and premium wages for denied lawful meal and rest periods,[2] as well as reimbursement for necessary incurred expenditures. Consequently, the wage statements/paystubs our client received failed to accurately reflect all employers, actual gross wages earned, and actual net wages earned. Because of these inaccurate paystubs, our client was never aware of what all true wages should have

---

[2] Premium pay for denied meal periods and rest breaks is considered a "wage" rather than a penalty. *See Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007).

been and how they were calculated, and suffered injury as a result. *See* Cal. Lab. Code § 226(e)(2). Similarly, for the same reasons, Defendants also failed to promptly pay Ms. Miller all wages owed each pay period, and upon conclusion of her employment. As such, Defendants are jointly liable to our client for violations of California Labor Code sections 226 and 226.3, as well as waiting time penalties at our client's average daily wages for up to 30 days under California Labor Code section 203. Similarly, because Defendants' payroll records are inaccurate, they are also jointly liable to our client for failing to maintain accurate payroll records in violation of California Labor Code sections 1174 and 1174.5.

## Failure to Promptly Pay Wages Owed

Because Defendants failed to provide compensation for all regular wages earned, overtime premium pay, premium wages for denied meal and rest periods, and reimbursement for necessary expenditures incurred, Ms. Miller and other similarly situated Delivery Drivers were not provided all earned compensation owed them each and every pay period. Likewise, for these same reasons, Ms. Miller was not promptly paid all wages upon her termination of employment. *See* Cal. Lab. Code §§ 201-206, 210, and 2696-2697. As such, Defendants are further jointly liable to our client for waiting time penalties for failing to timely pay all wages upon cessation of employment, at the average daily wage for up to 30 days. *See* Cal. Lab. Code § 203.

## Conclusion

In sum, Defendants' unlawful employment practices, as described in detail above, implicate violations of numerous California Labor Code sections, as well as IWC Wage Order 9-2001. Pursuant to California Labor Code sections 1182.12, 1194, 1194.2, 1197, 1197.1, and 1198, it is unlawful for a California employer to suffer or permit an employee to work without paying wages for all hours worked, as required by IWC Wage Order 9-2001. The payment for premium pay for overtime hours worked is mandated by California Labor Code sections 510, 558, 1174.5, and 1194. Meal and rest periods are governed by California Labor Code sections 226.7, 512, 218.5, 218.6, and 1198. California Labor Code sections 226, 226.3, 1174, and 1174.5 require that employers provide employees with accurate itemized wage statements, and maintain accurate payroll records. The prompt payment of wages owed is governed by California Labor Code sections 200-206, 210, 2926, and 2927. Further, employers are required to reimburse/indemnify employees for necessary expenditures incurred under California Labor Code sections 510, 2802, and 2804. In addition to the above, Defendants' employment practices implicate potential violations of numerous other California Labor Code sections, including, but not limited to, the following: California Labor Code sections 206.5; 219; 221; 223; 226.8; 227.3; 351; 432; 432.5; 512; 554; 1198.5; 2441; 2800; 2804; 2810, *et seq.*; 2698, *et seq.*; and 3357.

Accordingly, our client respectfully requests that the Labor and Workforce Development Agency ("LWDA") initiate enforcement with respect to the aforementioned violations. If the LWDA declines to pursue enforcement, our client will pursue these claims for statutory penalties on behalf of herself and all other current and former employees similarly situated. If you have any questions or concerns regarding the above, please do not hesitate to contact our offices. Thank you for your time and consideration of this matter.

Sincerely,

*/s/ William B. Richards, Jr.*
William B. Richards, Jr.

*bill@consumersadvocates.com*

**LAW OFFICES OF RONALD A. MARRON, APLC**
Ronald A. Marron
*ron@consumersadvocates.com*
Skye Resendes
*skye@consumersadvocates.com*

## cc (VIA EMAIL):

**COHELAN KHOURY & SINGER**
Jason Hill
*jhill@ckslaw.com*
Michael Singer
*msinger@ckslaw.com*
605 C Street, Ste. 200
San Diego, California 92101
Tel: (619) 595-3001
Fax: (619) 595-3000

# EXHIBIT 3

# amazonlogistics
## learning

Delivery Associate Participant Guide



**Table of Contents:**

Delivery Associate Course Agenda ........................................................................... 3

Safety – Job Aid ........................................................................................................... 4

Label Deep Dive – Shipping Label .............................................................................. 6

Label Deep Dive – Exception Codes ........................................................................... 7

8 Keys to a Perfect Delivery - Job Aid ........................................................................ 8

Device Overview – Job Aid .......................................................................................... 9

Different Delivery Situations – Job Aid ..................................................................... 13

We Missed You - Cards ............................................................................................... 14

Who to Call When – Visor Card .................................................................................. 17

Returning to the Station - Job Aid ............................................................................. 21

Notes Pages ................................................................................................................ 22

## Delivery Associate Course Agenda

| Topic List |
| --- |
| **Kick-off** |
| **Terminology** |
| **Delivery Process Overview** |
| **Safety** |
| **8 Keys to a Perfect Delivery** |
| **Label Deep Dive** |
| **Containerization** |
| **Device Overview** |
| **Different Delivery Situations** |
| **Navigating Your Route** |
| **Package Obstacle Course** |
| **Returning to the Station** |
| **Knowledge Check** |

## Safety – Job Aid

### Yard Safety

The yard is a busy place that has a high chance to have a lot of safety risks and equipment damage.

### What is a yard?

The yard is where delivery vehicles transition from driving to the loading docks to where trucks are parked.

#### *Example:*

Trucks are loaded, and are backing in and driving out for delivery. There are also DAs walking to their trucks. Vehicles and personnel must be visible to each other.

### How can I be safe in the yard?

- All Delivery Associates shall enter and exit the yard, facility, and dock using designated entrances, exits, and walkways.
- An ANSI Class 2 reflective vest is required to be worn when entering the truck yard.
- Observe posted speed limits, traffic patterns, stop signs, crosswalks, and other traffic rules.
- Vehicles are to be operated with the headlights and flashers on at all times.
- Maintain a safe following distance. Adjust the following distance as yard traffic or weather conditions dictate. Never "tailgate" or "bunch" units. Slow down when approaching crosswalks or blind corners.
- Do not impede access to any emergency equipment (i.e., fire hydrants, risers, etc.).
- Seat belts must be worn at all times in vehicles.
- Always remove ignition keys and doors locked when departing vehicle.
- Maintain three points of contact when entering and exiting your vehicle. Look before you step.
- Back up slowly and cautiously; never back up from the blind side.
- Only authorized vehicles are permitted within the yard.
- Employees, vendors, and contractors must park in designated areas.
- When in the yard, do not wear hoods or any item(s) that interfere with peripheral vision. Safety glasses or goggles, rain gear, and cold-weather gear may be worn during inclement weather.
- Smoking is only permitted in designated areas.

## Safe Lifting

Good body mechanics protects your body; especially your back, neck, shoulders, wrists and knees from pain and injury.

- Plan your lift
- Wide stance
- Use legs – bend knees
- Get help when needed and coordinate lifting*
- Keep back straight
- Tighten Stomach
- Weight close to body
- Avoid twisting

## Texting

**No Texting**

Texting the customer from any device is not allowed. To reach a customer, call the customer using your TC55. If you have any questions about your route or packages call TOC.

## Securing Your Vehicle

**At EVERY stop**

❑ The keychain lanyards that will now be required part of the uniform standard. You must ensure that the key chain is attached to the vehicles keys, and your belt loop at all times, even while operating the vehicle.



## Label Deep Dive – Exception Codes

### Exception Codes

| | | |
|---|---|---|
| **U**able **to** **L**ocate | UTL-DATE | The address cannont be found |
| **U**nable **to** **A**ccess | UTA-DATE | Missing gate code and is not listed in Rabbit |
| **B**usiness **C**losed | BC-DATE, Business Hours + Days | Business is not open |
| **N**o **S**ecure **L**ocation | NSL-DATE | No safe place for the package |
| **O**ut **of** **T**ime | OOT-DATE | Shift has ended |
| **D**a**M**aged | DM-DATE | Package is visibly damaged |
| **R**e**J**ecte**D** | RJD-DATE | Customer doesn't want the package |
| Customer rejected **F**uture **D**elivery **D**ate | FDD-DATE, DATE of re-attempt | Customer requested that the package delivered the next day |
| **M**i**SS**ort | MSS-DATE | An extra shipment not assigned to the route |

### Marking the Delivery Attempt Label - Sample

| 1st Delivery Attempt | 2nd Delivery Attempt | 3rd Delivery Attempt |
|---|---|---|
| NSL 11/18 | | |

## 8 Keys to a Perfect Delivery - Job Aid

### Overview

Concessions cost Amazon hundreds of thousands of dollars each month. Avoiding concessions by following the Keys to Perfect Delivery will make our customers and your managers happy about your performance as a Delivery Associate.

### What is a concession?

A concession is a refund, free replacement, or account credit linked to a delivery error.

### *Example:*

You deliver a package to Larry's home and leave the package by his front door. You mark in Rabbit – Delivered – Front Door and continue on your route. Larry gets a text at work telling him his package is waiting for him at home. Larry gets home and there is no package. Larry, then calls Amazon customer care and reports the missing package.

This is considered, Delivered, Not Received (DNR), and reported to your Delivery Service Provider (DSP).

### Follow the 8 Keys to a Perfect Delivery

1. Make sure you are at the correct address: Don't risk a concession
2. Knock on the door and ring the bell between 8am – 8pm
3. Deliver to the customer's front door when it is permitted and secure
4. Scan the package at the point of delivery (not from your vehicle)
5. When delivering to the customer directly, verify the customer's name
6. Be courteous and respectful to customers and other carriers
7. Follow the customer's delivery instructions when secure and safe
8. Never deliver to a USPS mailbox or Post Office

## Overview

The TC55 device is a vital piece of equipment for you during every step of delivering a package. Rabbit is the software application that runs the TC55.

## What are the TC55 and Rabbit?

The TC55 device is the hand-held device and Rabbit is the software that will log your mileage, keep track of the status of every one of your packages, and navigate for you throughout your route.

***Example:***

Suppose you have 120 packages to deliver on your route. Rather than giving you a list of packages and addresses your Dispatcher will give you a TC55 with Rabbit installed on it.

The device will:

- Tell you how to get to your first stop and which packages get delivered there.
- Keep track of all packages delivered and the reasons that any undelivered packages could not be delivered.

## How will I use the TC55 and Rabbit successfully?

Here are some of the TC55's basic functions:

- Turn on the device

- Open App
  - o Tap the **Rabbit App** Icon
  - o Tap Sign In with Amazon



- Sign In
  - o Enter your email address
  - o Enter your Password

- Menu
  - o Tap **Menu** located in upper left hand corner anytime to

- o Tap Sign In



access settings, help or to provide feedback



- • Keeping the TC55 safe:
  - o Place the TC55 in the vehicle holster to keep it from rolling around while you are driving, and to keep it visible for navigation.
  - o Place the TC55 on belt holster when out of the vehicle so it is not dropped, and "Delivered" status can be marked at the location.
- • Start navigation
  - o Use the **Start First Delivery** button



- **Scan Packages**
  - o The Programmable Button scans packages.



- **Select Delivery Location – Customer, Front Desk, Unattended Options**



- Unable to Deliver – Select the correct reason for not delivering



**Bottom line:**

- Always call your dispatcher if you have a problem with the TC55.
- If you are having problems with the route or with your packages, call TOC.

## Different Delivery Situations – Job Aid

### Unable to Locate Residence Workflow



**STEP 1** Check Rabbit → **STEP 2** Call the Customer → **STEP 3** Call TOC → **STEP 4** Mark the package UTL → Return to Station **STEP 6** Return package to station after route

### Unable to Access Residence Workflow



**STEP 1** Check TC55/Rabbit → **STEP 2** Call Customer → **STEP 3** Check for Leasing Office → **STEP 4** Call TOC → **STEP 5** Mark the package UTA → Return to Station **STEP 6** Return package to station after route

### No Secure Location Workflow



**STEP 1** Check Rabbit → **STEP 2** Call Customer → **STEP 3** Call TOC → **STEP 4** Leave We Missed You Card → **STEP 5** Mark the package NSL → Return to Station **STEP 6** Return package to station after route

# We Missed You Cards

When leaving  the package in a secure location, write the following on the We Missed You card to alert the customer where you left their package:

The following information should be written on the card:

1. Date
2. Customer name
3. Tracking number
4. Package left at the following location: (write details about the location of the package)



When there is no secure location to leave the package, write the following on the We Missed You card:

The following information should be written on the card:

1. Date
2. Customer name
3. Tracking number
4. What happens next? (mark the attempt box)





On the Delivery Attempt Label place write the code NSL, the date.

The following information should be written on the card:
1. Date
2. Customer name
3. Tracking number
4. What happens next?
   (mark the attempt box)



| 1st Delivery Attempt | 2nd Delivery Attempt | 3rd Delivery Attempt |
| --- | --- | --- |
|  |  |  |

On the Delivery Attempt Label place write the code BC, the date and the business hours.

## Who to Call When – Visor Card

### Overview

One way to work more efficiently is to know when to ask for help and whom to call. The visor card lists whom to call for some common types of situations. Another common need is getting access information from customers, and knowing what to do if you cannot get information.

### How can the visor card help?

- To find whom to call in certain common situations:
- A script you should use when you calling the customer

### Who to call when

| Contact | When to Call |
|---|---|
| Customer | • Unable to locate customer's residence: *See Unable to Locate Script*<br>• Unable to access customer's residence: *See Unable to Access Script*<br>• No Secure Location: *See No Secure Location Script* |
| TOC | • Unable to Access<br>• Unable to Locate<br>• No Secure Location<br>• Geo Code Problems<br>• Missorts (extra package) |
| Dispatcher | • TC55 or Rabbit Troubleshooting<br>• Vehicle Issues<br>• Running behind |

UNABLE TO LOCATE SCRIPT:

**What do you or say when you call the customer because you are unable to locate the residence?**

1. Call the customer only between 8am and 8pm.
   a. When the customer answers, say: "**Hello this is *Your Name* with an Amazon Delivery for *Customer Name*. I'm currently at *Your Location* and I'm having issues locating your address. Can you please assist me with directions?**"
   **IMPORTANT:** If the customer provides directions, add it into Rabbit for future deliveries.

   b. If the customer refuses for any reason, say: "That's not a problem, would you like for me to return the package to the center? Otherwise, I will continue to locate the address through our dispatch team. Thank you for your time."
   c. If the customer does not know directions, say: "**That's not a problem. I will continue to locate the address through our dispatch team. Thank you for your time**"
2. If the customer does not pick up the phone, **do not leave a voice message.**
   a. Call your TOC for assistance. They may be able to provide you with additional information.
   b. Ask someone for directions.
3. If you still cannot locate the address:
   a. Mark as **Unable to Deliver > Can't Find Address** in Rabbit.
   b. Write **UTL and the date** in the appropriate label attempt box.
   c. Return the package to the station at the end of your route.

**Note:** If the customer is requesting additional assistance refer them to Customer Service Line **1-877-252-2701**


UNABLE TO ACCESS SCRIPT:

**What do you do or say when you call the customer because you are unable to access the customer's residence?**

1. Call the customer only between 8am and 8pm.
   a. When the customer answers, say: "**Hello this is *Your Name*, with an Amazon Delivery for *Customer Name*. I'm currently having issues getting to your door because I don't have the code. Can you please assist me with gaining access?**"
   **IMPORTANT:** If the customer provides the access code, add it into Rabbit for future deliveries.

   b. If the customer refuses for any reason, say: "**That's not a problem, would you like for me to return the package to the center? Otherwise, I can attempt to gain access and reattempt delivery tomorrow. Thank you for your time.**"
   c. If the customer does not know the access code, say: "**That's not a problem. I will attempt to gain access and reattempt delivery tomorrow.**"

2. If the customer does not pick up the phone, **do not leave a voice message**.
   a. Look to see if there is a Leasing Office onsite. You may be able to leave the package there.
   b. Call TOC for assistance. They may be able to help you gain access.
3. If you still cannot access the property:
   a. Mark as **Unable to Deliver > Security Access Code Needed** in Rabbit.
   b. Write **UTA and the date** on the Attempted Delivery label.
   c. Return the package to the station at the end of your route.

**Note:** If the customer is requesting additional assistance refer them to Customer Service Line **1-877-252-2701**

NO SECURE LOCATION SCRIPT:

**What do you do or say when call the customer because you cannot find a secure location for the package?**
1. Call the customer only between 8am and 8pm.
   a. When the customer answers, say: **"Hello this is *Your Name* with an Amazon Delivery for *Customer Name*. I'm currently at *Your Location* and I'm having issues finding a secure location for your package. Is there a place I can leave your package that is secure?"**
   **IMPORTANT:** If the customer provides a secure location, add it into Rabbit for future deliveries.
   b. If the customer does have a secure location, say: **"That's not a problem. I we will attempt again tomorrow (for residence) or next business day (for commercial building)."**
2. If the customer does not pick up the phone, **do not leave a voice message**.
3. Call TOC for assistance. They may be able to provide you with additional information.
4. If there is no secure location:
   a. Mark as **Unable to Deliver > Nowhere Safe to leave the package** in Rabbit.
   b. Write **NSL and the date** on the Attempted Delivery label.
   c. Return the package to the station at the end of your route.

**Note:** If the customer is requesting additional assistance refer them to Customer Service Line **1-877-252-2701**

## What should I do if....

| | |
|---|---|
| I can't find the customer's location? | 1. Call the customer and ask for a cross street.<br>2. Call TOC and provide him/her with the TBA # and address. |
| I don't have an access code? | Call the customer and reference your visor card. If the customer does not answer, call TOC. |
| I am not going to make all of my deliveries in time? | Call your dispatcher to arrange for help. |

## Returning to the Station - Job Aid

### Overview

Returning to the station, and debriefing, can be a very quick process. But you have to have all your information and equipment ready.

### What is debriefing?

Debriefing is when you check out with an AMZL Shift Manger at the end of day to give them statuses of all of your returns. You will visit your DSP BEFORE going to debrief with the AMZL Shift Leader.

### How can I sequence debriefing successfully?

Here are some great ways to help yourself successfully perform your debrief:

- Check in with your dispatcher to discuss Return To Station (RTS) issues
- Things to Bring:
  - TC55
  - Any return packages
    - Scan and place into re-inject rack

## Notes Pages

**Directions:**

Use these pages for making any notes you need.

Notes:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____





**PROOF OF SERVICE**

*Miller v. Amazon.com, LLC, et al.*
**U.S.D.C. Case No. 17-CV-03488-MMC**

I, Amber Worden, declare as follows:

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to this action. My business address is 605 C Street, Suite 200, San Diego, CA 92101.

On January 5, 2018, I instituted service of the foregoing document(s) described as:

***SECOND AMENDED* CLASS ACTION COMPLAINT**

on the following parties:

| **Counsel for Defendant** | **Co-counsel for Plaintiff** |
|---|---|
| John S. Battenfeld, Esq. | Ronald A. Marron, Esq. |
| Brian D. Fahy, Esq. | LAW OFFICES OF RONALD A. MARRON |
| MORGAN, LEWIS & BOCKIUS LLP | 651 Arroyo Drive |
| 300 South Grand Avenue | San Diego CA 92103 |
| Twenty-Second Floor | Telephone: (619) 696-9006 |
| Los Angeles, CA 90071-3132 | ron@consumersadvocates.com |
| Telephone: (213) 612-2500 | |
| john.battenfeld@morganlewis.com | |
| brian.fahy@morganlewis.com | |

in the following manner (as indicated below):

  X   Submitting an electronic version of the document(s) via portable document format (PDF) to the court at https://ecf.cand.uscourts.gov.

Service will be deemed effective as provided for by Civil Local Rule 5-1 of the District Court of California, Northern District.

I declare that I am employed in the office of a member of the bar of this court at whose direction this service is made.

Executed January 5, 2018, at San Diego, California.

*Amber Worden*

Amber Worden